1
2
3
4
5
6
7

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| BRIANNA TABLER,<br><br>        Plaintiff,<br><br>    v.<br><br>PANERA LLC,<br><br>        Defendant. | Case No. 19-CV-01646-LHK<br><br>**ORDER GRANTING MOTION TO DISMISS WITH LEAVE TO AMEND, DENYING REQUEST TO STAY, AND DENYING AS MOOT REQUEST TO STRIKE**<br><br>Re: Dkt. Nos. 21, 22, 29 |

Before the Court is Defendant Panera LLC's motion to dismiss, or in the alternative, to stay the instant case or strike portions of Plaintiff's complaint. ECF No. 21. Having considered the submissions of the parties, the relevant law, and the record in this case, the Court GRANTS Defendant's motion to dismiss with leave to amend, DENIES Defendant's request to stay the instant case, and DENIES as moot Defendant's request to strike portions of Plaintiff's complaint.

## I.     BACKGROUND

### A. Factual Background

Plaintiff Brianna Tabler is a citizen of Santa Clara County, California. ECF No. 1 ("Compl.") ¶ 64. Defendant Panera LLC is a limited liability company that was formed under the

1

Case No. 19-CV-01646-LHK
ORDER GRANTING MOTION TO DISMISS WITH LEAVE TO AMEND, DENYING REQUEST TO STAY,
AND DENYING AS MOOT REQUEST TO STRIKE

laws of England and that maintains a domestic headquarters in New York City. *Id.* ¶ 67. Defendant manufactures, markets, and distributes "bread products," such as Defendant's Whole Grain Bagel (the "Products"), in retail outlets in California. *Id.* ¶¶ 5, 67, 68.

Plaintiff alleges that Defendant falsely and deceptively labels and markets the Products as "clean" or "100% clean." *Id.* ¶ 10. According to Plaintiff, the claim that the Products are "clean" features prominently in Defendant's advertising and marketing materials. *Id.* ¶ 15. Plaintiff asserts that this claim is "ubiquitous at the point of sale of the Products—on bags, signs, and labels throughout Panera's physical locations." *Id.* For example, Plaintiff indicates that signs and placards at Defendant's retail outlets display statements such as, "Food should be clean. No artificial colors, preservatives, sweeteners, flavors, or anything else you wouldn't want to serve your family." *Id.* ¶ 16. Plaintiff provides several images of advertisements that Plaintiff deems "representative":




Case No. 19-CV-01646-LHK
ORDER GRANTING MOTION TO DISMISS WITH LEAVE TO AMEND, DENYING REQUEST TO STAY, AND DENYING AS MOOT REQUEST TO STRIKE

*Id.*

Further, Plaintiff asserts that Defendant's bags display statements such as, "100% clean food," encircled by the statement, "No artificial flavors, sweeteners, preservatives / No colors from artificial sources." *Id.* ¶ 17. Once again, Plaintiff includes an image of an advertisement on a bag that Plaintiff deems "representative":



*Id.*

According to Plaintiff, Defendant also "uses a number of other representations to portray an image of 'clean,' chemical-free food, such as the earthy green and brown color schemes throughout its stores, webpages, and on its logo." *Id.* ¶ 18.

Notwithstanding these statements, Plaintiff alleges that the Products contain the residue of glyphosate, a synthetic biocide. *Id.* ¶ 21. Glyphosate is an artificial chemical derived from the amino acid glycine. *Id.* ¶¶ 23, 25. Glyphosate was invented by the agrochemical and agricultural biotechnology corporation Monsanto, which marketed the biocide under the trade name "Roundup." *Id.* ¶ 22.

United States District Court
Northern District of California

According to Plaintiff, the fact that the Products contain glyphosate residue renders Defendant's statements that the Products are "clean" or "100% clean" misrepresentations.  *Id.* ¶ 28.  Indeed, Plaintiff asserts that Defendant's statements indicate to reasonable consumers that the Products "do not contain residue of non-food items such as synthetic chemicals used during the ingredients' growing, harvest, or processing."  *Id.* ¶ 19.  Plaintiff claims that Defendant does not disclose that glyphosate residue is present in the Products on Defendant's website, packaging, signage, or in a biannual "Responsibility Report" that Defendant disseminates to provide information about the Products.  *Id.* ¶¶ 29, 30–36, 50.

Plaintiff alleges that Defendant is aware that the Products contain glyphosate residue and that Defendant is also aware of the source of the glyphosate residue in the production process.  *Id.* ¶¶ 39, 40.  Plaintiff asserts that Defendant purposefully fails to disclose this information in order to charge a premium from consumers, and in order to ensure that consumers do not cease purchasing the Products and switch to one of Defendant's competitors.  *Id.* ¶¶ 46, 47.

Plaintiff purchased Defendant's Whole Grain Bagel, as well as other unspecified Products, at unspecified times from three different retail outlets located in California.  *Id.* ¶ 65.  Plaintiff alleges that in deciding to make these purchases, Plaintiff "saw, relied upon, and reasonably believed" Defendant's "representations that the Products were '100% clean' or 'clean.'"  *Id.* ¶ 66.

### B. Procedural History

On March 29, 2019, Plaintiff filed the instant putative class action complaint against Defendant and two related entities.  *Id.* ¶ 1.  The complaint alleges causes of action under:  (1) California's Consumers Legal Remedies Act ("CLRA"), Cal. Civ. Code §§ 1750–1785; (2) California's False Advertisement Law ("FAL"), Cal. Bus. & Prof. Code § 17500 *et seq.*; and (3) California's Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code §§ 17200–17210.  *Id.* ¶¶ 82–112.  On May 15, 2019, Plaintiff filed a notice of voluntary dismissal of the two related entities.  ECF No. 5.  Thus, Defendant is the only remaining defendant in the instant case.  *Id.*

On July 10, 2019, Defendant filed the instant motion to dismiss, or in the alternative, to

4

stay the instant case or strike portions of Plaintiff's complaint.  ECF No. 21 ("Mot.").  On August 12, 2019, Plaintiff filed an opposition, ECF No. 23 ("Opp."), and on September 9, 2019, Defendant filed a reply, ECF No. 28 ("Reply").

On July 10, 2019, Defendant filed a request for judicial notice in support of Defendant's motion to dismiss, or in the alternative, to stay Plaintiff's complaint or strike portions thereof.  ECF No. 22.  On September 9, 2019, Defendant filed a second request for judicial notice in support of Defendant's reply.  ECF No. 29.  On September 17, 2019, Plaintiff opposed Defendant's two requests for judicial notice.  ECF No. 30.  Finally, on October 18, 2019, Plaintiff filed a statement of recent decision.  ECF No. 33.

## II.    LEGAL STANDARD

### A.  Motion to Dismiss Under Federal Rule of Civil Procedure 12(b)(6)

Rule 8(a)(2) of the Federal Rules of Civil Procedure requires a complaint to include "a short and plain statement of the claim showing that the pleader is entitled to relief."  A complaint that fails to meet this standard may be dismissed pursuant to Federal Rule of Civil Procedure 12(b)(6).  The U.S. Supreme Court has held that Rule 8(a) requires a plaintiff to plead "enough facts to state a claim to relief that is plausible on its face."  *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  "The plausibility standard is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully."  *Id.* (internal quotation marks omitted).  For purposes of ruling on a Rule 12(b)(6) motion, the Court "accept[s] factual allegations in the complaint as true and construe[s] the pleadings in the light most favorable to the nonmoving party."  *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008).

The Court, however, need not "assume the truth of legal conclusions merely because they are cast in the form of factual allegations."  *Fayer v. Vaughn*, 649 F.3d 1061, 1064 (9th Cir. 2011)

1   (per curiam) (internal quotation marks omitted).  Mere "conclusory allegations of law and

2   unwarranted inferences are insufficient to defeat a motion to dismiss." *Adams v. Johnson*, 355

3   F.3d 1179, 1183 (9th Cir. 2004).

4       **B.  Motion to Dismiss Under Federal Rule of Civil Procedure 9(b)**

5           Claims sounding in fraud are subject to the heightened pleading requirements of Federal

6   Rule of Civil Procedure 9(b).  *Bly-Magee v. California*, 236 F.3d 1014, 1018 (9th Cir. 2001).

7   Under the federal rules, a plaintiff alleging fraud "must state with particularity the circumstances

8   constituting fraud."  Fed. R. Civ. P. 9(b).  To satisfy this standard, the allegations must be

9   "specific enough to give defendants notice of the particular misconduct which is alleged to

10  constitute the fraud charged so that they can defend against the charge and not just deny that they

11  have done anything wrong."  *Semegen v. Weidner*, 780 F.2d 727, 731 (9th Cir. 1985).  Thus,

12  claims sounding in fraud must allege "an account of the time, place, and specific content of the

13  false representations as well as the identities of the parties to the misrepresentations." *Swartz v.

14  KPMG LLP*, 476 F.3d 756, 764 (9th Cir. 2007).  In other words, "[a]verments of fraud must be

15  accompanied by 'the who, what, when, where, and how' of the misconduct charged." *Vess v.

16  Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1106 (9th Cir. 2003) (citation omitted).  The plaintiff must

17  also plead facts explaining why the statement was false when it was made.  *See In re GlenFed,

18  Inc. Sec. Litig.*, 42 F.3d 1541, 1549 (9th Cir. 1994) (en banc), *superseded by statute on other

19  grounds as stated in Marksman Partners, L.P. v. Chantal Pharm. Corp.*, 927 F. Supp. 1297 (C.D.

20  Cal. 1996).

21          "When an entire complaint . . . is grounded in fraud and its allegations fail to satisfy the

22  heightened pleading requirements of Rule 9(b), a district court may dismiss the complaint . . . ."

23  *Vess*, 317 F.3d at 1107.  A motion to dismiss a complaint "under Rule 9(b) for failure to plead

24  with particularity is the functional equivalent of a motion to dismiss under Rule 12(b)(6) for

25  failure to state a claim."  *Id.*

26

27                                                    6

United States District Court
Northern District of California

## C. Leave to Amend

If the Court determines that a complaint should be dismissed, the Court must then decide whether to grant leave to amend. Under Rule 15(a) of the Federal Rules of Civil Procedure, leave to amend "shall be freely given when justice so requires," bearing in mind "the underlying purpose of Rule 15 to facilitate decisions on the merits, rather than on the pleadings or technicalities." *Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000) (en banc) (alterations and internal quotation marks omitted). When dismissing a complaint for failure to state a claim, "a district court should grant leave to amend even if no request to amend the pleading was made, unless it determines that the pleading could not possibly be cured by the allegation of other facts." *Id.* at 1130 (internal quotation marks omitted). Accordingly, leave to amend generally shall be denied only if allowing amendment would unduly prejudice the opposing party, cause undue delay, or be futile, or if the moving party has acted in bad faith. *Leadsinger, Inc. v. BMG Music Publ'g*, 512 F.3d 522, 532 (9th Cir. 2008).

## III.   DISCUSSION

In Defendant's motion to dismiss, or in the alternative, to stay the instant case or strike portions of Plaintiff's complaint, Defendant asserts that dismissal of Plaintiff's complaint is appropriate for four independent reasons: (1) no reasonable consumer would understand Defendant's alleged statements to mean that the Products are free of glyphosate residue; (2) the complaint does not plead reliance with sufficient specificity to meet the heightened pleading standard of Federal Rule of Civil Procedure 9(b); (3) Plaintiff's claims are preempted by the Federal Food, Drug, and Cosmetic Act ("FDCA") as amended by the Nutrition Labeling and Education Act ("NLEA"), 21 U.S.C. §§ 343-1(a)(2), (5); and (4) Plaintiff's claims interfere with the primary jurisdiction of the Food and Drug Administration ("FDA") and the Environmental Protection Agency ("EPA"), the two federal agencies tasked with determining the safety of glyphosate for human consumption. Mot. at 9–22.

Defendant also argues that, under the doctrine of primary jurisdiction, the Court should stay the instant case pending an upcoming decision by the EPA concerning the safety of

glyphosate for human consumption. *Id.* at 21. Finally, "in the alternative" to dismissal, Defendant requests that the Court strike Plaintiff's request for injunctive relief, Plaintiff's individual and class allegations to the extent the allegations concern Products that Plaintiff did not purchase, and Plaintiff's class allegations to the extent the allegations concern representations upon which Plaintiff did not rely. *Id.* at 1, 22–25.

The Court concludes that Plaintiff's claims are not preempted by the FDCA or the NLEA. The Court further concludes that exercise of the primary jurisdiction doctrine to either dismiss or stay the instant case is inappropriate. However, the Court concludes that dismissal of the complaint is nevertheless warranted. The Court concludes that Plaintiff's request for injunctive relief should be dismissed for lack of Article III standing, while Plaintiff's claims based on unpurchased products should be dismissed for lack of standing. The Court further concludes that the complaint as a whole fails to allege reliance with sufficient specificity to satisfy the heightened pleading standard of Federal Rule of Civil Procedure 9(b).

Accordingly, the Court need not reach Defendant's other arguments that no reasonable consumer would understand Defendant's statements to mean that the Products are free of glyphosate residue or that Plaintiff is not an adequate class representative. Furthermore, because the Court concludes that dismissal of the complaint is warranted, Defendant's "alternative" request for an order striking portions of the complaint is moot.

**A. Plaintiff's claims are not expressly preempted by the FDCA or NLEA.**

Defendant argues that the complaint should be dismissed because Plaintiff's claims are expressly preempted by the FDCA and NLEA. Mot. at 17–20. Plaintiff responds that Plaintiff's claims are not preempted by the FDCA and NLEA because the claims outlined in the complaint focus on Defendant's statements that the Products are "clean" and "100% clean," and not on the permissible level of glyphosate that the Products may contain. Opp. at 5–9. The Court agrees with Plaintiff. The FDCA does not preempt Plaintiff's claims in the instant case.

There are "three different types of preemption—'conflict,' 'express,' and 'field,'—but all

8

of them work in the same way: Congress enacts a law that imposes restrictions or confers rights on private actors; a state law confers rights or imposes restrictions that conflict with the federal law; and therefore the federal law takes precedence and the state law is preempted." *Murphy v. Nat'l Collegiate Athletic Ass'n*, 138 S. Ct. 1461, 1480 (2018) (citation omitted). In the instant case, Defendant argues only that the FDCA and NLEA expressly preempt Plaintiff's claims.[1] Mot. at 19. "Express preemption exists when a statute explicitly addresses preemption." *Reid v. Johnson & Johnson*, 780 F.3d 952, 958 (9th Cir. 2015).

The FDCA prohibits the misbranding of food and gives the FDA the authority to oversee the safety and labeling of food. 21 U.S.C. § 331. Congress amended the FDCA by enacting the NLEA, in order "to clarify and to strengthen the [FDA's] legal authority to require nutrition labeling on foods, and to establish the circumstances under which claims may be made about nutrients in foods." H.R. Rep. No. 101-538, at 7 (1990), *as reprinted in* 1990 U.S.C.C.A.N. 3336, 3337. The NLEA preempts state laws that impose labeling requirements that are "not identical" to certain federal requirements. 21 U.S.C. §§ 343-1(a)(2), (5).

The FDCA does not require food manufacturers to disclose the presence of glyphosate on food labels. The FDCA permits trace amounts of glyphosate to be present in foods in specified amounts, known as a "tolerance," without the food being deemed unsafe or adulterated. 21 U.S.C. §§ 346a(a)(1)(A), 346a(a)(4). States are prohibited from imposing different tolerance levels than the ones adopted by the FDA. 21 U.S.C. § 346a(n)(4). For grains such as the Products, the allowed tolerance level for glyphosate is 30 parts per million. 40 C.F.R. § 180.364(a)(1); Mot. at 19. There is no allegation in the instant case that the glyphosate residue in the Products exceeds the permissible level set by federal regulations. *Id.*

Defendant does not clearly indicate which provision of the FDCA or NLEA Defendant

---

[1] In Defendant's reply brief, Defendant occasionally references field preemption. Reply at 11. To the extent that Defendant seeks to raise an alternative field preemption argument, the Court "need not consider arguments raised for the first time in a reply brief." *Zamani v. Carnes*, 491 F.3d 990, 997 (9th Cir. 2007).

9

believes expressly preempts Plaintiff's claims. However, Defendant argues that Plaintiff's claims are preempted because under the FDCA, "trace amounts of glyphosate are expressly permitted." *Id.* Defendant misapprehends the nature of Plaintiff's claims. Plaintiff does not allege that Defendant cannot sell the Products because the Products contain trace amounts of glyphosate. Instead, Plaintiff alleges that Defendant's statements that the Products are "clean" or "100% clean" are misleading because of the presence of glyphosate residue in the Products. Compl. ¶¶ 82–112.

Under the FDCA, food is misbranded if "its labeling is false or misleading in any particular." 21 U.S.C. § 343(a)(1). The NLEA's preemption provision does not apply to 21 U.S.C. § 343(a)(1). *E.g.*, *Manuel v. Pepsi-Cola Co.*, 2018 WL 2269247, at *4 (S.D.N.Y. May 17, 2018) ("Significant here, the NLEA's preemption provision does not apply to § 343(a), the FDCA's prohibition on false or misleading labeling."). Thus, "the FDCA does not preempt state laws that allow consumers to sue . . . manufacturers that label or package their products in violation of federal standards." *Astiana v. Hain Celestial Group, Inc.*, 783 F.3d 753, 757 (9th Cir. 2015).

In *Astiana*, the plaintiffs claimed that the plaintiffs were deceived when they purchased cosmetics that were labeled "All Natural," "Pure Natural," or "Pure, Natural & Organic." *Id.* at 756. The plaintiffs claimed they would not have purchased the cosmetics had they been aware of the alleged fact that the cosmetics contained synthetic and artificial ingredients. *Id.* The Ninth Circuit held that the plaintiffs' state law claims were not expressly preempted by the FDCA. *Id.* at 758. The Ninth Circuit explained that "FDA regulations do not require [the defendant] to label its products as 'All Natural' or 'Pure Natural,'" and therefore that requiring removal of these allegedly misleading statements from product labels "does not run afoul of the FDCA." *Id.*

The same is true in the instant case. Defendant fails to identify any provision of the FDCA or NLEA that requires Defendant to label the Products as "clean" or "100% clean." Thus, requiring Defendant to refrain from using the words "clean" or "100% clean" to describe the

Products would not conflict with either statute. *See Tran v. Sioux Honey Ass'n, Coop.*, 2018 U.S. Dist. LEXIS 146380, at *7 (C.D. Cal. Aug. 20, 2018) (holding that FDCA and NLEA did not expressly preempt claims based on allegedly misleading description of food product as "pure" and "100% pure"); *see also Lockwood v. Conagra Foods, Inc.*, 597 F. Supp. 2d 1028, 1031–32 (N.D. Cal. 2009) (holding that claims based on allegedly misleading description of food product as "all natural" were not expressly preempted by FDCA or NLEA).

Defendant's authority to the contrary is unpersuasive. Defendant argues that *Gibson v. Quaker Oats Co.*, 2017 WL 3508724 (N.D. Ill. Aug. 14, 2017), supports Defendant's argument that Plaintiff's claims are expressly preempted. Mot. at 18–19. However, *Gibson* is distinguishable. First, unlike the instant case, the plaintiff in *Gibson* sought defendants' express disclosure of the presence of glyphosate in the challenged products. *Gibson*, 2017 WL 3508724, at *3. Second, in arriving at its conclusion about preemption, the *Gibson* court misquoted 21 U.S.C. § 343-1. *Id.* For these reasons, subsequent courts have found *Gibson* to be "distinguishable and unpersuasive." *Axon v. Citrus World, Inc.*, 354 F. Supp. 3d 170, 180 (E.D.N.Y. 2018); *see also Parks v. Ainsworth Pet Nutrition, LLC*, 377 F. Supp. 3d 241, 246 (S.D.N.Y. 2019) (declining to follow *Gibson* and concluding that plaintiff's claims challenging descriptions of products as "natural" were not expressly preempted by FDCA or NLEA).

Accordingly, the Court concludes that Plaintiff's claims are not expressly preempted by the FDCA or NLEA. The Court therefore DENIES Defendant's motion to dismiss the complaint on the basis of express preemption. The Court proceeds to consider whether the application of the primary jurisdiction doctrine is appropriate in the instant case.

**B. The application of the primary jurisdiction doctrine is inappropriate in the instant case.**

Defendant asserts that the Court should employ the primary jurisdiction doctrine to either dismiss or stay the instant case pending the outcome of EPA agency review of the safety of

11

glyphosate for human consumption.[2]  Mot. at 22.  Defendant claims that the outcome of this review is likely "to control any decision in this case."  *Id.*  Plaintiff responds that the complaint solely concerns whether Defendant's "representations are deceptive to a reasonable consumer."  Opp. at 10.  Plaintiff therefore argues that "Plaintiff's claims are unrelated to any findings regarding the safety or proper residue levels of glyphosate."  *Id.*  The Court agrees with Plaintiff.  The application of the primary jurisdiction doctrine is inappropriate in the instant case because Plaintiff's claims do not depend on the safety of glyphosate for human consumption.

"The primary jurisdiction doctrine allows courts to stay proceedings or to dismiss a complaint without prejudice pending the resolution of an issue within the special competence of an administrative agency."  *Clark v. Time Warner Cable*, 523 F.3d 1110, 1114 (9th Cir. 2008).  "Primary jurisdiction applies in a limited set of circumstances."  *Id.*  Although "no fixed formula exists for applying the doctrine of primary jurisdiction," courts in the Ninth Circuit traditionally exercise primary jurisdiction "where there is (1) the need to resolve an issue that (2) has been placed by Congress within the jurisdiction of an administrative body having regulatory authority (3) pursuant to a statute that subjects an industry or activity to a comprehensive regulatory scheme that (4) requires expertise or uniformity in administration."  *Davel Commc'ns, Inc. v. Qwest Corp.*, 460 F.3d 1075, 1086–87 (9th Cir. 2006) (internal quotation marks and alteration omitted).

However, "the doctrine is not designed to secure expert advice from agencies every time a court is presented with an issue conceivably within the agency's ambit."  *Clark*, 523 F.3d at 1114 (internal quotation marks omitted).  "Instead, it is to be used only if a claim requires resolution of an issue of first impression, or of a particularly complicated issue that Congress has committed to a regulatory agency and if protection of the integrity of a regulatory scheme dictates preliminary resort to the agency which administers the scheme."  *Id.* (internal quotation marks and citation

_____

[2] Defendant discusses agency action undertaken by the FDA in addition to the EPA, but Defendant ultimately argues only that "this Court should dismiss (or alternatively stay) this case until the EPA reaches its final determination on this issue."  Mot. at 22.  Accordingly, the Court's primary jurisdiction analysis focuses on contemplated action by the EPA.

Case No. 19-CV-01646-LHK
ORDER GRANTING MOTION TO DISMISS WITH LEAVE TO AMEND, DENYING REQUEST TO STAY, AND DENYING AS MOOT REQUEST TO STRIKE

omitted). Further, under Ninth Circuit precedent, "'efficiency' is the 'deciding factor' in whether to invoke primary jurisdiction." *Astiana*, 783 F.3d at 760 (citing *Rhoades v. Avon Prods., Inc.*, 504 F.3d 1151, 1165 (9th Cir. 2007)).

Defendant does not argue that the primary jurisdiction doctrine should be deployed because Plaintiff's claims require "resolution of an issue of first impression." Instead, Defendant argues that Plaintiff's complaint "is really about what constitutes a safe level of glyphosate," and that the complaint therefore requires the Court to "determine a particularly complicated issue that Congress has committed" to the EPA. Mot. at 22; *Clark*, 523 F.3d at 1114. Defendant points to ongoing periodic EPA review of the safety of glyphosate for human consumption, which Defendant claims "could trigger a revision to existing tolerance levels for glyphosate." Mot. at 21.

The Court disagrees that the instant case primarily concerns the safety of glyphosate. Instead, the complaint focuses on transparency regarding the presence of synthetic chemicals in the Products. The complaint alleges that "demand has increased for food products that provide assurances about how they are produced and prepared—that is, products that are free from unnatural ingredients, synthetic chemicals, or other remnants of artificial or extensive processing." Compl. ¶ 2. Plaintiff therefore alleges that Defendant's representations mislead consumers to believe "the Products are of a higher quality, free from synthetic chemicals, or free from chemical residues from the production process when they are not." *Id.* ¶ 6. The safety of glyphosate for human consumption is not the subject of these allegations.

The question of whether Plaintiff's statements about the Products are misleading thus does not require the Court to determine "a particularly complicated issue that Congress has committed to" the EPA. *Clark*, 523 F.3d at 1114. Indeed, Plaintiff's complaint is "far less about science than it is about whether a label is misleading." *Jones v. ConAgra Foods, Inc.*, 912 F. Supp. 2d 889, 898 (N.D. Cal. 2012). Furthermore, "'every day courts decide whether conduct is misleading,'" and the "'reasonable-consumer determination and other issues involved in Plaintiff's lawsuit are within the expertise of the courts to resolve.'" *Id.* at 899 (quoting *Lockwood*, 597 F. Supp. 2d at

United States District Court
Northern District of California

1035, and *Delacruz v. CytoSport*, 2012 WL 2563857, at *10 (N.D. Cal. June 28, 2012)); *see also Chacanaca v. The Quaker Oats Co.*, 752 F. Supp. 2d 1111, 1124 (N.D. Cal. 2010) (stating that plaintiffs advance a "relatively straightforward claim: they assert that defendant has violated FDA regulations and marketed a product that could mislead a reasonable consumer. This is a question courts are well-equipped to handle").

Defendant's authority to the contrary is not persuasive. First, Defendant cites *Tran v. Sioux Honey Ass'n, Coop.*, 2017 WL 5587276 (C.D. Cal. Oct. 11, 2017). However, in *Tran*, unlike in the instant case, the plaintiff conceded that the plaintiff's complaint did in fact depend "on the harmful nature of glyphosate."[3] *Id.* at *2. Second, Defendant cites *Scholder v. Riviana Foods Inc.*, 2017 WL 2773586 (E.D.N.Y. June 23, 2017). In *Scholder*, however, the court stayed the case pending ongoing rulemaking to set the regulatory meaning of the term "natural" in food products. *Id.* at *2. This same term formed the basis of *Scholder*'s complaint. *Id.* at *1. In the instant case, there is no indication whatsoever that the EPA will enact a rule concerning the use of the terms "clean" or "100% clean" in food products. Opp. at 11. Instead, as described above, the sole EPA agency action that Defendant discusses is the periodic EPA review of the safety of glyphosate for human consumption. Mot. at 21.

Thus, because this case does not "require[] resolution of an issue of first impression, or of a particularly complicated issue that Congress has committed to a regulatory agency," the Court DENIES Defendant's motion to dismiss the complaint, or alternatively stay the instant case, on the basis of primary jurisdiction. *Clark*, 523 F.3d at 1114 (internal quotation marks and citation omitted). The Court next proceeds to consider whether Plaintiff possesses Article III standing to pursue injunctive relief.

---

[3] The Court also notes that when the *Tran* court invoked the primary jurisdiction doctrine to stay the case for six months in order to refer the relevant labeling question to the FDA, the FDA did not act, and the *Tran* court ultimately opted to lift the stay. *Tran v. Sioux Honey Ass'n, Coop.*, 2018 U.S. Dist. LEXIS 146380, at *1 (C.D. Cal. Aug. 20, 2018) (explaining that "[t]he FDA declined to weigh in on the issue" of the alleged misrepresentations related to glyphosate).

14

Case No. 19-CV-01646-LHK
ORDER GRANTING MOTION TO DISMISS WITH LEAVE TO AMEND, DENYING REQUEST TO STAY, AND DENYING AS MOOT REQUEST TO STRIKE

### C. Plaintiff lacks Article III standing to pursue injunctive relief.

Defendant argues that "Plaintiff has not adequately alleged a threat of prospective harm and lacks standing to seek injunctive relief" under Article III. Mot. at 23. Plaintiff responds that a "reasonable inference" from the complaint is that Plaintiff seeks to purchase the Products in the future and therefore Plaintiff does have standing to seek injunctive relief. The Court agrees with Defendant. Plaintiff lacks standing to pursue injunctive relief on the facts alleged in the complaint.

To establish Article III standing for prospective injunctive relief, a plaintiff must demonstrate that "he has suffered or is threatened with a concrete and particularized legal harm, coupled with a sufficient likelihood that he will again be wronged in a similar way." *Bates v. United Parcel Serv*., Inc., 511 F.3d 974, 985 (9th Cir. 2007) (internal citation and quotation marks omitted). A plaintiff must establish a "real and immediate threat of repeated injury." *Id.*; *see also Chapman v. Pier 1 Imports (U.S.) Inc.*, 631 F.3d 939, 946 (9th Cir. 2011) (en banc) ("[T]o establish standing to pursue injunctive relief . . . [a plaintiff] must demonstrate a real and immediate threat of repeated injury in the future.").

Plaintiff alleges that Plaintiff seeks "change to the current Products' representations, packaging, labels and marketing, or a reformulation of the Products so that the Products no longer contain glyphosate residue." Compl. ¶ 60. According to Plaintiff, the "reasonable inference" from the relief Plaintiff seeks is that "Plaintiff wishes to continue purchasing the Products if they no longer contain glyphosate residue and/or may purchase the Products in the future and incorrectly assume the Products were improved if the representations are not changed." Opp. at 4.

However, the Ninth Circuit has held that "for injunctive relief, which is a prospective remedy, the threat of injury must be actual and imminent, not conjectural or hypothetical." *Davidson v. Kimberly-Clark Corp.*, 889 F.3d 956, 967 (9th Cir. 2018) (internal quotation marks omitted). "In other words, the threatened injury must be certainly impending to constitute injury in fact and allegations of *possible* future injury are not sufficient." *Id.* (internal quotation marks omitted) (emphasis in original). Here, Plaintiff makes no allegation of future injury in the

15

complaint whatsoever.  Further, even if the Court makes the inference that Plaintiff requests the Court make, Plaintiff still fails to allege any future injury that is "certainly impending."  Instead, Plaintiff alleges only the *possibility* of future injury arising from the fact that Plaintiff "*may* purchase the Products in the future."  Opp. at 4 (emphasis added).

Accordingly, the Court GRANTS Defendant's motion to dismiss Plaintiff's prayer for injunctive relief.[4]  The Court finds that granting Plaintiff leave to amend the complaint would not be futile, cause undue delay, or unduly prejudice Defendant, and that Plaintiff has not acted in bad faith.  *Leadsinger*, 512 F.3d at 532.  The Court therefore GRANTS Plaintiff leave to amend.

The Court proceeds to consider Defendant's argument that Plaintiff lacks standing to bring claims on the basis of unpurchased Products.

**D. Plaintiff lacks standing under the CLRA, FAL, and UCL to bring claims based on substantially similar products.**

Defendant argues that Plaintiff lacks standing under the CLRA, FAL, and UCL to bring claims on the basis of Products that Plaintiff does not allege that she purchased.  Mot. at 23–24.  In support of this argument, Defendant notes that the complaint only specifically identifies "the Whole Grain Bagel" as a Product that Plaintiff purchased, alongside unspecified other "bread products."  Compl. ¶ 65.  In response, Plaintiff argues that Plaintiff has standing to bring claims based on unpurchased Products because these Products are "substantially similar" to the Whole Grain Bagel.  Opp. at 4.  The Court agrees with Defendant.  Plaintiff has not sufficiently alleged that the other Products that Plaintiff seeks to use as the basis of her claims are "substantially similar" to the Whole Grain Bagel for the purposes of standing.

To establish standing under the CLRA, FAL, and UCL, a plaintiff must allege that the plaintiff suffered an "injury in fact" and "has lost money or property" as a result of a defendant's

---

[4] Defendant frames the challenge to Plaintiff's prayer for injunctive relief as a motion to strike, but cites case law involving motions to dismiss.  *See* Mot. at 23.  Further, a motion to strike "is not the appropriate procedural vehicle when challenging the legal availability of a particular remedy."  *Byrne v. Crown Asset Mgmt., LLC*, 2018 WL 1609479, at *2 (N.D. Cal. Apr. 3, 2018).  Accordingly, the Court construes Defendant's motion to strike for lack of Article III standing as a motion to dismiss in part under Rule 12(b)(1).

16

alleged conduct. *See* Cal. Bus. & Prof. Code §§ 17204, 17535; Cal. Civ. Code § 1780(a); *Carrea v. Dreyer's Grand Ice Cream, Inc.*, 2011 WL 159380, at *2 (N.D. Cal. Jan. 10, 2011), *abrogated on other grounds by Hawkins v. Kroger Co.*, 906 F.3d 763, 771 n.7 (9th Cir. 2018). Defendant asserts that Plaintiff lacks standing to bring CLRA, FAL, and UCL claims because Plaintiff failed to allege that Plaintiff "purchased or otherwise suffered injury from [D]efendant's" Products other than the Whole Grain Bagel. Mot. at 24.

"The majority of the courts in this district and elsewhere in California reject the proposition that a plaintiff can not suffer injury in fact based on products that the plaintiff did not buy." *Coleman-Anacleto v. Samsung Elecs. Am., Inc.*, 2016 WL 4729302, at *9 (N.D. Cal. Sept. 12, 2016). Some courts reserve the question of whether plaintiffs may assert claims based on products they did not buy until ruling on a motion for class certification. *See, e.g.*, *Forcellati v. Hyland's, Inc.*, 876 F. Supp. 2d 1155, 1161 (C.D. Cal. 2012); *Cardenas v. NBTY, Inc.*, 870 F. Supp. 2d 984, 992 (E.D. Cal. 2012); *Clancy v. The Bromley Tea Co.*, 308 F.R.D. 564, 571 (N.D. Cal. 2013). Others "hold that a plaintiff may have standing to assert claims for unnamed class members based on products he or she did not purchase so long as the products and alleged misrepresentations are substantially similar." *Miller v. Ghirardelli Chocolate Co.*, 912 F. Supp. 2d 861, 869 (N.D. Cal. 2012) (citing cases).

This Court has consistently applied the "substantially similar" approach when analyzing standing challenges. *See, e.g.*, *Coleman-Anacleto*, 2016 WL 4729302, at *10 (N.D. Cal. Sept. 12, 2016); *Philips v. Ford Motor Co.*, 2015 WL 4111448, at *6 (N.D. Cal. July 7, 2015); *Bruton v. Gerber Prods. Co.*, 2014 WL 172111, at *8 (N.D. Cal. Jan. 15, 2014); *Kane*, 2013 WL 5289253, at *10–11; *Brazil*, 2013 WL 5312418, at *7–8 (N.D. Cal. Sept. 23, 2013). This case law dictates that, "in asserting claims based on products a plaintiff did not purchase, but which are nevertheless substantially similar to products a plaintiff did purchase, a plaintiff is not suing over an injury she did not suffer. Rather, a plaintiff in that scenario is suing over an injury she personally suffered and asserting that others who purchased similar products suffered substantially the same injury,

17

even if the products that caused the injury were not identical in every respect." *Bruton*, 2014 WL 172111, at *8 (citations omitted).

Moreover, this Court has previously explained that the substantially similar approach is consistent with the Ninth Circuit's admonition that courts "should not be too rigid in applying standing requirements to proposed classes." *Brazil*, 2013 WL 5312418, at *4 (quoting *Lanovaz v. Twining's N. Am., Inc.*, 2013 WL 2285221, at *2 (N.D. Cal. May 23, 2013)). In particular, when evaluating whether a plaintiff has standing to sue on behalf of others who have suffered similar, but not identical injuries, the Ninth Circuit has held that in "determining what constitutes the same type of relief or the same kind of injury, we must be careful not to employ too narrow or technical an approach. Rather, we must examine the questions realistically: we must reject the temptation to parse too finely, and consider instead the context of the inquiry." *Id.* (quoting *Armstrong v. Davis*, 275 F.3d 849, 867 (9th Cir. 2001), *abrogated on other grounds by Johnson v. California*, 543 U.S. 499, 504–05 (2005)).

In the instant case, it is impossible to say on the facts alleged in the complaint whether the "Whole Grain Bagel" and other "bread products" that Plaintiff allegedly purchased are substantially similar to the Products that Plaintiff seeks to challenge. The complaint never defines "bread product," and in fact, the complaint is wholly devoid of details about *any* of the "bread products" that Plaintiff purchased or the Products that Plaintiff seeks to challenge. Accordingly, the Court simply cannot say that the unpurchased Products are substantially similar to the Whole Grain Bagel and other unspecified "bread products" that Plaintiff did in fact purchase. When a complaint fails to adequately allege how products a plaintiff purchased are in fact substantially similar to products that the plaintiff challenges, the Court must dismiss the complaint to the extent it seeks to bring claims on the basis of unpurchased products. *See, e.g.*, *Bruton*, 2014 WL 172111, at *8 (dismissing complaint when complaint "failed to explain how these [unpurchased] categories of products are substantially similar in kind to the Purchased Products").

Accordingly, the Court GRANTS Defendant's motion to dismiss in part the complaint to

18

the extent the allegations are based on Products that Plaintiff did not purchase.[5] The Court finds

that granting Plaintiff leave to amend the complaint would not be futile, cause undue delay, or

unduly prejudice Defendant, and that Plaintiff has not acted in bad faith. *Leadsinger*, 512 F.3d at

532. The Court therefore GRANTS Plaintiff leave to amend.

Finally, the Court proceeds to consider whether Plaintiff has pleaded reliance on alleged

misrepresentations by Defendant with sufficient particularity under Federal Rule of Civil

Procedure 9(b).

### E. Plaintiff does not adequately allege reliance on specific statements.

Defendant argues that Plaintiff has failed to identify which of Defendant's alleged

representations Plaintiff actually relied on "*prior to* making her purchase." Mot. at 17.

Accordingly, Defendant claims that Plaintiff has not met the pleading standard of Federal Rule of

Civil Procedure 9(b).[6] *Id.* Plaintiff concedes that Plaintiff does not "allege reliance on a specific

advertisement." Opp. at 1–2. However, Plaintiff argues that Plaintiff has satisfied an exception

under California law established by *In re Tobacco II Cases*, 46 Cal. 4th 298 (2009), which permits

Plaintiff to plead her claims without alleging reliance on any specific representations. *Id.* at 2.

The Court agrees with Defendant. Plaintiff fails to allege reliance on Defendant's

representations with the specificity required by Federal Rule of Civil Procedure 9(b). Further, the

*In re Tobacco II* exception that Plaintiff invokes is narrow and unavailable under the facts alleged

in Plaintiff's complaint. The Court first addresses Plaintiff's failure to plead reliance with

---

[5] Defendant frames the challenge to Plaintiff's standing to bring claims for substantially similar products as a motion to strike, but cites case law involving motions to dismiss. *See* Mot. at 24; *Carrea*, 2011 WL 159380, at *3 (holding that because plaintiff did not "allege[] that he purchased" certain challenged products, "[a]ny claims as to the [challenged] products are therefore dismissed without prejudice"). Accordingly, the Court construes Defendant's motion to strike for lack of standing as a motion to dismiss.

[6] Defendant also occasionally invokes Federal Rule of Civil Procedure 8(a). Mot. at 17. However, Rule 9(b), not Rule 8(a), sets forth the pleading standard that a plaintiff's allegations of reliance must satisfy in fraud cases. *See, e.g.*, *In re Volkswagen "Clean Diesel" Mktg., Sales Practices, and Prods. Liab. Litig.*, 349 F. Supp. 3d 881, 917 (N.D. Cal. 2018) (explaining that plaintiffs' allegations of reliance in fraud claims must satisfy Rule 9(b) standards). Accordingly, the Court analyzes Defendant's arguments under Rule 9(b).

19

Case No. 19-CV-01646-LHK
ORDER GRANTING MOTION TO DISMISS WITH LEAVE TO AMEND, DENYING REQUEST TO STAY, AND DENYING AS MOOT REQUEST TO STRIKE

United States District Court
Northern District of California

sufficient specificity to satisfy the standard set by Rule 9(b). The Court then turns to the unavailability of the *In re Tobacco II* exception to this standard.

### 1. Plaintiff fails to meet the heightened pleading standard of Federal Rules of Civil Procedure 9(b).

Federal Rule of Civil Procedure 9(b)'s heightened pleading requirement applies to Plaintiff's CLRA, FAL, and UCL claims because all three of these claims are based on Defendant's allegedly fraudulent course of conduct: Defendant's alleged misrepresentations that the Products are "clean" or "100% clean." *See Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1125 (9th Cir. 2009) ("[W]e have specifically ruled that Rule 9(b)'s heightened pleading standards apply to claims for violations of the CLRA and UCL."); *Brazil v. Dole Food Co., Inc.*, 935 F. Supp. 2d 947, 963 (N.D. Cal. 2013) (applying Rule 9(b)'s heightened pleading standard to FAL claims for misleading, deceptive, and untrue advertising); *see also Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1106 (9th Cir. 2003) (stating that when a plaintiff "allege[s] a unified course of fraudulent conduct and rel[ies] entirely on that course of conduct as the basis of a claim . . . the claim is said to be 'grounded in fraud' . . . and the pleading of that claim as a whole must satisfy the particularity requirement of Rule 9(b)").

When CLRA, FAL, and UCL claims are premised on misleading advertising or labeling, Rule 9(b) requires the plaintiff to allege "the particular circumstances surrounding [the] representations" at issue. *Kearns*, 567 F.3d at 1126. This rule applies regardless of whether the statements at issue are misleading because they are affirmative misrepresentations or because they contain material omissions. *See, e.g.*, *Williamson v. Reinalt-Thomas Corp.*, 2012 WL 1438812, at *13 (N.D. Cal. Apr. 25, 2012) (citing *Kearns*, 567 F.3d at 1127, for the proposition that "a claim based on a nondisclosure or omission is a claim for misrepresentation in a cause of action for fraud, and it must be pleaded with particularity under Rule 9(b)").

In the instant case, Plaintiff alleges that at unspecified times, Plaintiff purchased unspecified "bread products," "including the Whole Grain Bagel[,] on multiple occasions" from three of Defendant's retail outlets. Compl. ¶ 65. Plaintiff also makes the rote allegation that in

deciding to make these purchases, Plaintiff "saw, relied upon, and reasonably believed" Defendant's "representations that the Products were '100% clean' or 'clean.'" *Id.* ¶ 66.

These allegations do not satisfy the heightened pleading standard of Rule 9(b). It is unclear which, if any, of the "representative" advertisements described in the complaint Plaintiff actually relied upon before Plaintiff decided to purchase the unspecified Products. This is particularly significant because each of the "representative" advertisements that Plaintiff includes in the complaint contains different language. *See* Compl. ¶¶ 16, 17.

Plaintiff's failure to specify which Products she purchased compounds the uncertainty. Indeed, one of the "representative" advertisements that Plaintiff reproduces in the complaint refers to Defendant's "salad dressing," *see id.* ¶ 16, but Plaintiff never alleges that Plaintiff purchased salad dressing from Defendant.

Nor does Plaintiff provide any information about when Plaintiff allegedly viewed Defendant's advertisements, or which ones Plaintiff found to be material in making her purchases. The complaint therefore "fails to give [Defendant] the opportunity to respond to the alleged misconduct." *Kearns*, 567 F.3d at 1126.

"[T]his Court and other courts in this circuit have held that a plaintiff does not satisfy Rule 9(b) when the plaintiff generally identifies allegedly misleading statements but fails to specify which statements the plaintiff actually saw and relied upon." *In re Arris Cable Modem Consumer Litig.*, 2018 WL 288085, at *8 (N.D. Cal. Jan. 4, 2018). *Pirozzi v. Apple Inc.*, 913 F. Supp. 2d 840 (N.D. Cal. 2012), illustrates this principle. In *Pirozzi*, the plaintiff cited a number of statements by the defendant that allegedly indicated that plaintiff's personal information would be kept secure. *Id.* at 845–46. However, the plaintiff failed "to provide the particulars of her own experience reviewing or relying upon any of those statements." *Id.* at 850. Indeed, the plaintiff did not "specify when she was exposed to the statements or which ones she found material to her decisions to purchase" products from the defendant. *Id.* Accordingly, the court dismissed the complaint for failure to meet the heightened pleading standard of Rule 9(b). *See also In re Arris*,

United States District Court
Northern District of California

2018 WL 288085, at *9 (dismissing complaint under Rule 9(b) because the complaint identified "a range of statements" that were allegedly misleading, but plaintiffs did not specify "which statements any of them saw or relied on in deciding to buy" products from the defendant).

That is the precise strategy that Plaintiff seeks to employ in the instant case. As outlined above, Plaintiff only identifies a range of "representative" advertisements that Plaintiff alleges to be misleading, but Plaintiff provides no indication of which statements, if any, Plaintiff herself relied on before purchasing the unspecified Products. This failure undermines Defendant's ability to "defend against the charge." *Semegen v. Weidner*, 780 F.2d 727, 731 (9th Cir. 1985). Accordingly, the Court concludes that Plaintiff fails to meet the heightened pleading standard of Rule 9(b). The Court proceeds to consider whether the *In re Tobacco II* exception nevertheless saves Plaintiff's complaint from dismissal.

### 2. Plaintiff does not satisfy the *In re Tobacco II* exception.

Plaintiff does not dispute that the complaint fails to sufficiently plead reliance on specific misstatements to satisfy the requirements of Rule 9(b). However, Plaintiff nevertheless claims that Plaintiff "need not allege reliance on a specific advertisement" because of the impact of a California Supreme Court decision, *In re Tobacco II*, 46 Cal. 4th 298. The Court disagrees. *In re Tobacco II* does not apply to the instant case under the facts alleged in the complaint.

In *In re Tobacco II*, the California Supreme Court held that in narrow circumstances, a plaintiff may state a UCL claim for a fraudulent advertising campaign without alleging reliance on any specific misrepresentations. 46 Cal. 4th at 327. *In re Tobacco II* concerned a putative class of plaintiffs that brought a UCL claim against defendants for alleged misrepresentations concerning the safety of cigarettes. *Id.* at 327–28. In evaluating this claim, the California Supreme Court explained that when "a plaintiff alleges exposure to a long-term advertising campaign, the plaintiff is not required to plead with an unrealistic degree of specificity that the plaintiff relied on particular advertisements or statements." *Id.* Accordingly, the California Supreme Court held that a plaintiff may "plead and prove actual reliance" without pointing to "specific misrepresentations"

where the alleged misrepresentations "were part of an extensive and long-term advertising campaign." *Id.* at 328.

When *In re Tobacco II* applies, Rule 9(b) may not be read to require a plaintiff to plead reliance on specific advertisements. *Haskins v. Symantec Corp.*, 2013 WL 6234610, at *5 (N.D. Cal. Dec. 2, 2013). However, the scope of *In re Tobacco II* is narrow. As explained by the California Court of Appeal in *Pfizer Inc. v. Superior Court*, *In re Tobacco II* "does not stand for the proposition that a consumer who was never exposed to an alleged false or misleading advertising or promotional campaign" may bring a claim for relief. 182 Cal. App. 4th 622, 632 (2010). "Rather, *In re Tobacco II* stands for the narrower, and more straightforward proposition that, where a plaintiff has been exposed to numerous advertisements over a period of decades, the plaintiff is not required to 'plead with an unrealistic degree of specificity [the] particular advertisements and statements' that she relied upon." *Kane v. Chobani, Inc.*, 2013 WL 5289253, at *9 (N.D. Cal. Sept. 19, 2013) (quoting *In re Tobacco II*, 46 Cal. 4th at 328) (emphasis added); *see also In re Arris*, 2018 WL 288085, at *9 (noting that "the *Tobacco II* exception [is] narrow and applie[s] [to] long-term advertising campaigns").

Plaintiff has not pleaded facts to show that the *In re Tobacco II* exception applies to the instant case. Plaintiff makes no assertion that Defendant's alleged misrepresentations were made pursuant to a "long-term advertising campaign," much less that Plaintiff "has been exposed to numerous advertisements over a period of decades." *Kane*, 2013 WL 5289253, at *9. In fact, Plaintiff makes no allegation whatsoever concerning the duration or pervasiveness of Defendant's alleged advertising campaign, which renders *In re Tobacco II* wholly inapplicable. *See, e.g.*, *Delacruz v. Cytosport, Inc.*, 2012 WL 1215243, at *8 (N.D. Cal. Apr. 11, 2012) (dismissing complaint for failure to sufficiently plead reliance when plaintiff failed to allege the existence of "advertising campaign [that] approached the longevity and pervasiveness of the marketing at issue in *Tobacco II*"); *see also Bronson v. Johnson & Johnson, Inc.*, 2013 WL 1629191, at *3 (N.D. Cal. Apr. 16, 2013) ("At best, Defendants' marketing campaign began in 2012, which is

23

substantially less than the 'long-term' campaign at issue in *Tobacco II* that lasted at least seven years.").

Plaintiff relies solely on the allegation that Defendant's "representations are ubiquitous at the point of sale of the Products—on bags, signs, and labels throughout [Defendant's] physical locations." Compl. ¶ 15; Opp. at 1. However, Plaintiff provides insufficient details to allege that Defendant's representations approach the "longevity and pervasiveness of the marketing at issue in *Tobacco II*." 2012 WL 1215243, at *8. It is unclear, for instance, which statements Plaintiff seeks to challenge. As noted above, one of the "representative" advertisements that Plaintiff reproduces in the complaint refers to Defendant's "salad dressing," *see id.* ¶ 16, but Plaintiff never alleges that Plaintiff purchased salad dressing from Defendant. Further, Plaintiff provides no information concerning the timing or duration of the alleged misstatements, nor does Plaintiff describe their location with any specificity.

Plaintiff's allegations therefore closely resemble the ones at issue in *PETA v. Whole Foods Mkt. Cal.*, 2016 WL 362229 (N.D. Cal. Jan. 29, 2016). In *PETA*, as in the instant case, the plaintiffs alleged that defendant's "in-store advertisements on placards, signs, and napkins" "inundated" the plaintiffs when they entered defendant's stores. *Id.* at *1, 5. However, the *PETA* court held that in order to benefit from the *In re Tobacco II* exception, plaintiffs were required to plead additional facts, including "which signs and placards were deceptive advertising," and "over what time period they were placed in the store." *Id.*

The same is true here. The unadorned assertion that allegedly fraudulent representations are "ubiquitous at the point of sale" is insufficient to plead an advertising campaign of the necessary "longevity and pervasiveness" required to invoke *In re Tobacco II*. *See also Anderson v. SeaWorld Parks and Entm't, Inc.*, 2016 WL 8929295, at *8 (N.D. Cal. Nov. 7, 2016) (rejecting applicability of *In re Tobacco II* because plaintiff failed to "include particular details about the extent and pervasiveness of the [defendant's] advertising campaign").

Finally, Plaintiff's reliance on *Schneider v. Chipotle Mexican Grill, Inc.*, 328 F.R.D. 520

(N.D. Cal. 2018), the sole case Plaintiff cites in support of her position other than *In re Tobacco II* itself, is misplaced. Opp. at 2. In *Schneider*, the issue before the Court was class certification under Rule 23, not the pleading standard for reliance under Rule 9(b). 328 F.R.D. at 540. Further, the *Schneider* court specifically found that "[t]his case *does not involve the type of massive advertising campaign* that gives rise to a presumption of exposure to all class members," as would be the case if *In re Tobacco II* applied to the facts before the *Schneider* court. *Id.* (emphasis added). Thus, to the extent the *Schneider* court does refer to *In re Tobacco II*, the *Schneider* court's decision in fact undermines Plaintiff's position. *Id.*

Because the Court concludes that Plaintiff has failed to satisfy the heightened pleading standard of Rule 9(b) and does not qualify for the exception contemplated by *In re Tobacco II*, the Court therefore GRANTS Defendant's motion to dismiss the complaint in its entirety.[7] Further, the Court finds that granting Plaintiff leave to amend the complaint would not be futile, cause undue delay, or unduly prejudice Defendant, and that Plaintiff has not acted in bad faith. *Leadsinger*, 512 F.3d at 532. The Court therefore GRANTS Plaintiff leave to amend.[8]

## IV. CONCLUSION

For the foregoing reasons, the Court GRANTS Defendant's motion to dismiss with leave to amend. The Court DENIES Defendant's request to stay the instant case, and the Court DENIES as moot Defendant's request to strike portions of Plaintiff's complaint.

---

[7] The Court need not consider the exhibits that are the subject of Defendant's two requests for judicial notice in order to resolve the instant motion. Accordingly, Defendant's requests for judicial notice are DENIED as moot. ECF Nos. 22, 29; *see, e.g.*, *Davis v. Apperience Corp.*, 2014 WL 5528232, at *1 (N.D. Cal. Oct. 31, 2014) ("In support of their present motion, defendants request judicial notice of two exhibits . . . . Because this order need not reach those exhibits to decide the present motion, the request for judicial notice is DENIED AS MOOT.").

[8] Defendant also argues that Plaintiff lacks class standing to the extent that Plaintiff "seeks to represent a class based on ads she did not rely on." Mot. at 25. The Court need not reach the question of Plaintiff's standing to serve as class representative at the motion to dismiss stage. Further, as discussed above, dismissal of the complaint renders Defendant's "alternative" request for an order striking portions of the complaint on this basis moot. *See supra* Section III. Nevertheless, and as outlined by the foregoing, Plaintiff must adequately allege reliance in order to state a claim sufficient to survive a motion to dismiss. *See supra* Section III.E.

25

Plaintiff shall file any amended complaint within 30 days of this Order. In the amended complaint, to the extent that Plaintiff does not plead the existence of an advertising campaign of the necessary "extent and pervasiveness" to satisfy the *In re Tobacco II* exception, Plaintiff shall set forth in chart form the misstatements that Plaintiff challenges on a numbered, statement-by-statement basis: (1) the challenged statement; (2) the location and timing of the statement; (3) the Product(s) covered by the statement; (4) the date on which Plaintiff witnessed the statement; and (5) the Product(s) Plaintiff purchased on the basis of the statement.

Failure to file an amended complaint within 30 days of this Order or failure to cure deficiencies identified herein or in Defendant's motion to dismiss will result in dismissal of the deficient claims with prejudice. Plaintiff may not add new causes of action or new parties without a stipulation or leave of the Court.

**IT IS SO ORDERED.**

Dated: October 29, 2019

_____
LUCY H. KOH
United States District Judge

Case No. 19-CV-01646-LHK
ORDER GRANTING MOTION TO DISMISS WITH LEAVE TO AMEND, DENYING REQUEST TO STAY, AND DENYING AS MOOT REQUEST TO STRIKE