1   CROWELL & MORING LLP
    Valerie M. Goo (SBN 187334)
2   VGoo@crowell.com
    Raija J. Horstman (SBN 277301)
3   RHorstman@crowell.com
    Sigourney R. Haylock (318195)
4   SHaylock@crowell.com
    515 South Flower Street, 40th Floor
5   Los Angeles, CA  90071
    Telephone:    213.622.4750
6   Facsimile:    213.622.2690

7   Attorneys for Defendants PANERA, LLC

8

9                   **UNITED STATES DISTRICT COURT**

10                 **NORTHERN DISTRICT OF CALIFORNIA**

11

12  BRIANNA TABLER, on behalf of herself          Case No. 19-cv-1646-LHK
    and all others similarly situated,
13                                                 **NOTICE OF MOTION AND MOTION TO**
                    Plaintiff,                     **DISMISS PLAINTIFF'S AMENDED**
14                                                 **COMPLAINT; MEMORANDUM OF**
            v.                                     **POINTS AND AUTHORITIES IN**
15                                                 **SUPPORT THEREOF**
    PANERA, LLC, PANERA BREAD
16  COMPANY, and JAB HOLDING                       Date:  May 14, 2020
    COMPANY, S.A.R.L.,                             Time: 1:30 pm
17                                                 Ctrm: 8
                    Defendants.
18                                                 Complaint Filed:  March 29, 2019
                                                   Amended Complaint Filed: November 27, 2019
19                                                 Judge: The Honorable Lucy H. Koh

20                                                 [Filed Concurrently with [Proposed] Order
                                                   Granting Panera LLC's Motion to Dismiss
21                                                 Plaintiff's Amended Complaint]

22

23

24

25

26

27

28

# TABLE OF CONTENTS

**Page(s)**

MEMORANDUM OF POINTS AND AUTHORITIES ............................................................ 2

I.      INTRODUCTION ..................................................................................................... 2

II.     STATEMENT OF ALLEGATIONS ....................................................................... 4

III.    STANDARD OF REVIEW ...................................................................................... 5

IV.     ARGUMENT ............................................................................................................ 7

        A.      Plaintiff Has Not Adequately Alleged Reliance on Specific Representations......... 7

        B.      Plaintiff Has Not Alleged Facts That The *In Re Tobacco II* Exception Applies. .... 9

        C.      Plaintiff's Complaint Should Be Dismissed Because No Reasonable Consumer
                Would Be Misled By Panera's Definition Of "100% Clean." .............................. 11

                1.      Panera Has Clearly And Conspicuously Defined For Consumers What It
                        Means By "100% Clean." ........................................................................ 12

                2.      Clean Has No Generally Accepted Meaning With Respect To Food
                        Outside Of Panera's Definition, And Cannot Reasonably Mean The
                        Complete Absence Of Glyphosate Residue, Which Is Not Alleged To
                        Exceed Federal Tolerances. ..................................................................... 13

                        a.      The Dictionary Definition Of "Clean" Shows That The Term is
                                Ambiguous in the Abstract................................................................ 14

                        b.      The Realities Of The Food Production And Its Regulations Support
                                That "100% Clean" Does Not Ban All Glyphosate. ...................... 15

                        c.      Courts Regularly Dismiss Cases Such as This................................ 16

                3.      Plaintiff's Claims Based On Panera's Alleged Omissions Fail. ................ 17

        D.      Plaintiff Is Not Entitled To Injunctive Relief Because She Fails To Allege Future
                Harm........................................................................................................................ 18

        E.      Plaintiff's Claims Regarding Any Other Products Should Be Dismissed Because
                She Fails To Allege They Are Substantially Similar. ............................................ 19

V.      CONCLUSION ....................................................................................................... 21

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

CROWELL
& MORING LLP
ATTORNEYS AT LAW

1

2

# TABLE OF AUTHORITIES

**Page(s)**

3

**Federal Cases**

4

*In re 100% Grated Parmesan Cheese Mktg. & Sales Practices Litig.*,
   275 F. Supp. 3d 910, 921 (N.D. Ill. 2017) ...................................................11, 12, 15

5

*Airs Aromatics, LLC v. Opinion Victoria's Secret Stores Brand Mgmt., Inc.*,
   744 F.3d 595 (9th Cir. 2014).................................................................................12

6

7

*Anderson v. SeaWorld Parks and Entm't, Inc.*,
   2016 WL 8929295 (N.D. Cal. Nov. 7, 2016).............................................11, 15, 16

8

9

*In re Arris Cable Modem Consumer Litig.*,
   No. 17-CV-01834-LHK, 2018 WL 288085 (N.D. Cal. Jan. 4, 2018) ...................7, 8

10

*Axon v. Citrus World, Inc.*,
   354 F. Supp. 3d 170, 183 (E.D.N.Y. 2018)........................................................15, 17

11

12

*Bates v. United Parcel Serv., Inc.*,
   511 F.3d 974 (9th Cir. 2007)...................................................................................18

13

14

*Bay Area Surgical Mgmt., LLC v. Blue Cross Blue Shield of Minnesota Inc.*,
   No. 12-CV-0848-LHK, 2012 WL 2919388 (N.D. Cal. July 17, 2012) .........5, 13, 20

15

*Bradley v. Chiron Corp.*,
   No. C 94-04342 CW, 1996 WL 441022 (N.D. Cal. July 15, 1996).........................12

16

17

*Brazil v. Dole Food Co., Inc.*,
   935 F. Supp. 2d 947 (N.D. Cal. 2013) ......................................................................7

18

19

*Brenner v. Procter & Gamble Co.*,
   No. SACV161093JLSJCG, 2016 WL 8192946 (C.D. Cal. Oct. 20, 2016) .............19

20

*Bronson v. Johnson & Johnson, Inc.*,
   2013 WL 1629191 (N.D. Cal. Apr. 16, 2013) ..........................................................9

21

22

*Cafasso, U.S. ex rel. v. Gen. Dynamics C4 Sys., Inc.*,
   637 F.3d 1047 (9th Cir. 2011)..............................................................................6, 7

23

24

*Carrea v. Dreyer's Grand Ice Cream, Inc.*,
   No. C 10-01044 JSW, 2011 WL 159380 (N.D. Cal. Jan. 10, 2011)........................19

25

*Cole v. Sunnyvale*,
   No. C-08-05017 RMW, 2010 WL 532428 (N.D. Cal. Feb. 9, 2010) ......................20

26

27

*Coleman-Anacleto v. Samsung Elecs. Am., Inc.*,
   No. 16-CV-02941-LHK, 2016 WL 4729302 (N.D. Cal. Sept. 12, 2016 .................20

28

*Davidson v. Kimberly-Clark Corp.*,
    889 F.3d 956 (9th Cir. 2018) .......................................................................... *passim*

*Delacruz v. Cytosport, Inc.*,
    2012 WL 1215243 (N.D. Cal. Apri. 11, 2012) ............................................................9

*Ebner v. Fresh, Inc.*,
    838 F.3d 958 (9th Cir. 2016) .................................................................................11

*Fasugbe v. Willms*,
    No. CIV. 2:10-2320 WBS, 2011 WL 2119128 (E.D. Cal. May 26, 2011) .............................20

*Fink v. Time Warner Cable*
    714 F.3d 739 (2d Cir. 2013) ..................................................................................12

*Freeman v. Time, Inc.*,
    68 F.3d 285 (9th Cir. 1995) .............................................................................11, 12

*In re Gen. Mills Glyphosate Litig.*,
    No. 16-2869, 2017 WL 2983877 (D. Minn. July 12, 2017) ..............................................15, 17

*Gitson v. Trader Joe's Co.*,
    No. 13-cv-01333-WHO, 2013 WL 5513711 (N.D. Cal. Oct. 4, 2013) ...............................6, 11

*Granfield v. NVIDIA Corp.*,
    No. C 11-05403 JW, 2012 WL 2847575 (N.D. Cal. July 11, 2012) ........................................20

*Haskins v. Symantec Corp.*,
    No. 13-CV-01834-JST, 2014 WL 2450996 (N.D. Cal. June 2, 2014) .........................................9

*Hodsdon v. Mars, Inc.*,
    162 F. Supp. 3d 1016, 1024 (N.D. Cal. 2016) .........................................................18

*Kearns v. Ford Motor Co.*,
    567 F.3d 1120 (9th Cir. 2009) .............................................................................6, 7, 9

*Kokkonen v. Guardian Life Ins. Co. of Am.*,
    511 U.S. 375 (1994) .................................................................................................5

*Lanovaz v. Twinings N. Am., Inc.*,
    No. C-12-02646-RMW, 2013 WL 675929 (N.D. Cal. Feb. 25, 2013) ...................................19

*Leadsinger, Inc. v. BMG Music Pub.*,
    512 F.3d 522 (9th Cir. 2008) ..................................................................................6

*Parks v. Ainsworth Pet Nutrition, LLC*,
    377 F. Supp. 3d 241, 247 (S.D.N.Y. 2019) .............................................................13, 15, 16

*PETA v. Whole Foods Mkt. Cal.*,
    2016 WL 362229 (N.D. Cal. Jan. 29, 2016) ..............................................................10

*Pirozzi v. Apple Inc.*,
   913 F. Supp. 2d 840 (N.D. Cal. 2012) ........................................................8

*Reddy v. Litton Indus., Inc.*,
   912 F.2d 291 (9th Cir. 1990)........................................................12

*Robertson v. Dean Witter Reynolds, Inc.*,
   749 F.2d 530 (9th Cir. 1984)........................................................5

*Safe Air for Everyone v. Meyer*,
   373 F.3d 1035 (9th Cir. 2004)........................................................5

*Semegen v. Weidner*,
   780 F.2d 727 (9th Cir. 1985)........................................................6, 9

*Smith v. Ford Motor Co.*,
   462 F. App'x 660 (9th Cir. 2011) ........................................................18

*Stock W., Inc. v. Confederated Tribes of the Colville Reservation*,
   873 F.2d 1221 (9th Cir. 1989)........................................................5

*In re Tobacco II*
   46 Cal. 4th 298 (2009) ........................................................ *passim*

*Vess v. Ciba-Geigy Corp. USA*,
   317 F.3d 1097 (9th Cir. 2003)........................................................6

*Williams v. Gerber Prod. Co.*,
   552 F.3d 934 (9th Cir. 2008)........................................................11, 12

### State Cases

*Clean Label Project Foundation v. Panera, LLC*,
   No. 2019 CA 001898 B (D.C. Super.  Ct. Mar. 22, 2019)........................................................13

### Federal Statutes

7 U.S.C. § 6518(k)(5)........................................................16

### Regulations

7 C.F.R. § 205.671 ........................................................16

40 C.F.R. § 180.1(e) ........................................................15

40 C.F.R. § 180.364(a)(1) ........................................................15

62 Fed. Reg. 17,723-01, 17,725-26 (Apr. 11, 1997)........................................................15

65 Fed. Reg. 80,548-01, 80,629 (Dec. 21, 2000)........................................................16

1

**Other Authorities**

2   Federal Rule of Civil Procedure 9(b) ........................................................................... *passim*

3   Federal Rule of Civil Procedure 12(b)(1) ................................................................1, 3, 5

4   Federal Rule of Civil Procedure 12(b)(6) ............................................................1, 3, 5, 6

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

<u>**NOTICE OF MOTION AND MOTION TO DISMISS**</u>

**PLEASE TAKE NOTICE** that on May 14, 2020 at 1:30 p.m. in Courtroom 8 of this Court, 280 S. First Street, 4th Floor, San Jose, CA 95113, Defendant Panera, LLC ("Defendant" or "Panera") will and does move this Court for an order dismissing Plaintiff Brianna Tabler's ("Plaintiff") Amended Complaint pursuant to Federal Rule of Civil Procedure 12(b)(1), 12(b)(6) and 9(b) on the following grounds:

1.     Plaintiff's First, Second, and Third Causes of Action should be dismissed for failure to state a claim under the CLRA, FAL, and UCL because Plaintiff fails to allege with the requisite particularity which specific advertisements she saw, relied upon, and reasonably believed, when she saw them, or where she saw them prior to purchasing Panera's products, and her allegations do not satisfy the *In re Tobacco II* exception.

2.     Plaintiff's First, Second, and Third Causes of Action fail to state a claim under the CLRA, FAL, and/or UCL because no reasonable consumer would understand the advertisements in this case to mean that Panera's Whole Grain Bagel does not contain trace amounts of glyphosate pesticide residue, especially where those advertisements clearly define "100% clean" to mean no artificial flavors, sweeteners, preservatives, and/or colors.

3.     Plaintiff lacks Article III standing for injunctive relief because there is no allegation of prospective harm.

4.     Plaintiff's claims should be dismissed for any products other than the Whole Grain Bagel because she has not alleged facts showing that any other products are substantially similar.

This Motion is based on this Notice of Motion and Motion, the accompanying memorandum and [Proposed] Order, the Court's file, and such other documents and information that the Court may consider.[1]

---

[1] Panera does not waive and reserves all rights regarding its preemption and primary jurisdiction arguments and defenses.

**STATEMENT OF ISSUES**

A.      Whether, under Federal Rule of Civil Procedure Rule ("Rule") 12(b)(6) and Rule 9(b), Plaintiff's Amended Complaint fails to state a claim under the CLRA, FAL, and/or UCL for failure to allege with the requisite particularity which specific advertisements she saw, relied upon, and reasonably believed, when she saw them, or where she saw them prior to purchasing Panera's products, and her allegations do not satisfy the *In re Tobacco II* exception.

B.      Whether, under Rule 12(b)(6), Plaintiff's Amended Complaint fails to state a claim under the CLRA, FAL, and/or UCL because no reasonable consumer would understand the advertisements in this case to mean that Panera's Whole Grain Bagel ("Bagel") does not contain trace amounts of glyphosate pesticide residue, especially where those advertisements clearly define "100% clean" to mean no artificial flavors, sweeteners, preservatives, and/or colors.

C.      Whether, under Rule 12(b)(1), Plaintiff's prayer for injunctive relief should be dismissed for failure to allege future harm.

D.      Whether Plaintiff's claims should be dismissed regarding any product other than the Bagel.

**MEMORANDUM OF POINTS AND AUTHORITIES**

**I.    INTRODUCTION**

The Court dismissed Plaintiff's initial Complaint, among other reasons, for failure to adequately plead her claims with sufficient particularity as required by FRCP 9(b).  ECF No. 35, Order Granting Motion To Dismiss With Leave To Amend, Denying Request To Stay, And Denying As Moot Request To Strike ("Order") at p. 20.  The Court gave Plaintiff leave to amend ***and specifically instructed***: "[i]n the amended complaint . . . Plaintiff shall set forth in chart form the misstatements that Plaintiff challenges on a numbered statement-by-statement basis: (1) the challenged statement; (2) the location and timing of the statement; (3) the Product(s) covered by the statement; (4) the date on which Plaintiff witnessed the statement; and (5) the Product(s) Plaintiff purchased on the basis of the statement." *Id.* at p. 26.  Plaintiff utterly failed to comply with this clear order.  Plaintiff provided no chart.  Nor did Plaintiff allege anywhere else in her amended complaint any of the specifics that the Court identified:  (1) Plaintiff did not specify any

specific statement challenged; (2) Plaintiff did not specify the location or timing of the statement; (3) Plaintiff did not specify the Product(s) covered by the Statement; (4) Plaintiff did not specify the date on which she allegedly witnessed the statement; and (5) Plaintiff did not identify the Product(s) Plaintiff purchased on the basis of the statement.  Nor did Plaintiff allege facts to show that her reliance on any statement is unnecessary under the *In re Tobacco II* standard.  46 Cal. 4th 298 (2009).  This failure is even more significant given that Plaintiff has alleged all new representative samples of advertising in her amended complaint – only one image (a bag which clearly defines the meaning of "100% clean") remains the same.  *Compare* ECF No. 1 at pp. 5-6 *to* ECF No. 41, Plaintiff's First Amended Complaint ("FAC"), at pp. 5-7.  Plaintiff has also failed to allege future harm and that any other product is substantially similar to the Bagel.  This Court gave Plaintiff specific instructions on what and how to plead facts that would adequately state a claim and the opportunity to do so.  Plaintiff has failed to even attempt to follow these instructions.

Plaintiff's FAC also fails because it still does not plausibly allege conduct that would mislead reasonable consumers.  Plaintiff has dropped her allegations based on materials that say "clean" and now bases her allegations on only materials that say "100% clean."  *See generally* FAC.  But this does not change the analysis.  The ordinary and reasonable meaning of "100% clean," both as specifically defined in Panera's advertising and as a general matter, does not mean zero trace of synthetic chemicals (which comply with the law and are derived from commonly permitted uses in agriculture).  As clearly set forth in the very photographs included in Plaintiff's FAC, Panera expressly defines "100% clean: No artificial flavors, sweeteners, preservatives / No colors from artificial sources."  FAC at p. 7.  Even if Plaintiff somehow missed this express definition, the ordinary dictionary definition of clean does not help her: "clean" generically means free from dirt.[2]  Plaintiff insists on its own idiosyncratic definition that "100% clean" means *no trace of any* synthetic chemicals even where those are present due to ordinary and legal pesticide use in agriculture.

---

[2] Merriam Webster, Clean (December 10, 2019 3:56 PM), https://www.merriam-webster.com/dictionary/clean.

Plaintiff's allegation defies what a reasonable consumer would think.  Plaintiff's conclusory assertions that reasonable consumers would be deceived because Panera's "100% clean" products allegedly *may* have contained trace glyphosate residues fail to state a claim. Federal courts across the country have dismissed similar false advertising claims based on trace amounts of glyphosate including claims brought the CLRA, FAL, and UCL.  This Court should do the same – and since Plaintiff has made no attempt to comply with this Court's instructions in its prior Order, the Court should dismiss without leave to amend.

## II.   STATEMENT OF ALLEGATIONS

Plaintiff alleges that Panera sells various food items at its retail outlets "advertised and promoted as '100% clean.'"  FAC ¶ 4.  Plaintiff alleges that the phrase "100% clean" "featur[es] prominently" in [Panera's] advertising and marketing materials," "on bags, signs, and labels throughout Panera's physical locations."  *Id.* ¶ 16; *see also id.* ¶¶ 17-18.  Plaintiff claims "during the class period" she purchased unidentified "Panera products, including Whole Grain Bagels" at three locations in California, *id.* ¶ 66, in which she generally "saw and believed the in-store signage representing that all of the foods sold there were '100% clean.'"  *Id.* ¶¶ 66-67.

But ***Plaintiff does not specify which*** in-store signage she saw at **which** Panera location, **which** statements she relied on, or **when** any of this occurred.  *Id*.  Plaintiff includes new photographs of signs and other marketing materials in her FAC as examples, but she does not state which, if any, of these particular materials she actually saw, believed, and relied upon at all. *See id.* at pp. 5-7.  Plaintiff alleges that "[p]roducts with detectible glyphosate residue are not '100% clean,'" *id.* ¶ 26, and that since Panera's website and retail outlets do not "clarify that artificial biocide residue is present in the Products . . . representations of '100% clean' products . . . are material omissions . . . ." *id.* ¶ 31.  But Plaintiff never alleges that Panera states that "100% clean" means no glyphosate residue.  The photographs on page seven of the FAC demonstrate that the ads explain exactly what "100% clean" means:  (1) no artificial flavors, (2) no artificial sweeteners, (3) no artificial preservatives, and (4) no artificial colors.  *Id.* at p. 7.

("No artificial flavors, sweeteners, preservatives / No colors from artificial sources").[3]

Plaintiff alleges an unspecified independent laboratory test performed on a bagel sold by an unspecified Panera location at an unspecified time showed an unspecified amount of glyphosate residue.[4]  *Id.* ¶ 21.  She does not say that she purchased and tested this the bagel(s) she allegedly purchased, or that the bagel actually tested was from the same store locations where she allegedly purchased, or even that the bagel tested was purchased in the same year as her alleged purchase.  Plaintiff also alleges that other Panera products tested by an independent laboratory do **_not_** contain glyphosate residue.  *Id.* ¶ 69.

### III.   <u>STANDARD OF REVIEW</u>

Rule 12(b)(1) allows a party to challenge a federal court's jurisdiction over the subject matter of the complaint.  Fed. R. Civ. P. 12(b)(1).  A federal court is presumed to lack subject matter jurisdiction until the contrary affirmatively appears.  *Stock W., Inc. v. Confederated Tribes of the Colville Reservation*, 873 F.2d 1221, 1225 (9th Cir. 1989).  The party invoking jurisdiction bears the burden of establishing that the court has the requisite subject matter jurisdiction to grant the relief requested.  *See Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994).  A complaint will be dismissed if, looking at the complaint as a whole, it appears to lack federal jurisdiction either "facially" or "factually."  *Safe Air for Everyone v. Meyer,* 373 F.3d 1035, 1039 (9th Cir. 2004).

Rule 12(b)(6) requires that a claim be dismissed if it fails "to state a claim upon which relief can be granted."  Fed. R. Civ. P. 12(b)(6).  Failure to allege a cognizable legal theory or the facts thereunder may be the basis of a successful motion to dismiss.  *See Robertson v. Dean Witter Reynolds, Inc.*, 749 F.2d 530, 534 (9th Cir. 1984).

CLRA, FAL, and UCL claims grounded in fraud must satisfy the heightened pleading standards of Rule 9(b).  *Davidson v. Kimberly-Clark Corp.*, 889 F.3d 956, 964 (9th Cir. 2018),

---

[3] Plaintiff herself quoted this exact language in her initial Complaint.  ECF 1, ¶¶ 16, 17. The court can consider omitted prior allegations in determining the plausibility of the amended pleading. *See, e.g.*, *Bay Area Surgical Mgmt., LLC v. Blue Cross Blue Shield of Minnesota Inc.*, No. 12-CV-0848-LHK, 2012 WL 2919388, at *11 (N.D. Cal. July 17, 2012) (Koh, J.).
[4] Glyphosate is the active ingredient used in a pesticide.  FAC ¶ 22.

*cert. denied*, 139 S. Ct. 640 (2018) (finding that plaintiff's CLRA, FAL, and UCL causes of action grounded in fraud must satisfy the heightened pleading requirements of Rule 9(b)) (citing *Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1125 (9th Cir. 2009)); *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1106–08 (9th Cir. 2003) (finding that Rule 9(b) applied to plaintiff's CLRA, FAL and UCL causes of action against a particular defendant and dismissing the Complaint as to that defendant). *See also Gitson v. Trader Joe's Co.*, No. 13-cv-01333-WHO, 2013 WL 5513711, at *3 (N.D. Cal. Oct. 4, 2013) (finding that plaintiffs' claims under the UCL regarding unspecified products failed to meet 9(b) pleading standards and dismissing them with leave to amend). "In alleging fraud . . . a party must state with particularity the circumstances constituting fraud." Fed. R. Civ. P. 9(b). "To properly plead fraud with particularity under Rule 9(b), ***'a pleading must identify the who, what, when, where, and how*** of the misconduct charged, as well as what is false or misleading about the purportedly fraudulent statement, and why it is false.'" *Davidson*, 889 F.3d at 964 (quoting *Cafasso, U.S. ex rel. v. Gen. Dynamics C4 Sys., Inc.*, 637 F.3d 1047, 1055 (9th Cir. 2011)) (emphasis added).

To satisfy this standard, the allegations must be "specific enough to give defendants notice of the particular misconduct which is alleged to constitute the fraud charged so that they can defend against the charge and not just deny that they have done anything wrong." *Semegen v. Weidner*, 780 F.2d 727, 731 (9th Cir. 1985). "When an entire complaint . . . is grounded in fraud and its allegations fail to satisfy the heightened pleading requirements of Rule 9(b), a district court may dismiss the complaint . . . ." *Vess*, 317 F.3d at 1107. A motion to dismiss a complaint "under Rule 9(b) for failure to plead with particularity is the functional equivalent of a motion to dismiss under Rule 12(b)(6) for failure to state a claim." *Id.*

The decision of whether to grant leave to amend is within the discretion of the district court, which may deny leave to amend due to "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, and futility of amendment. *Leadsinger, Inc. v. BMG Music Pub.*, 512 F.3d 522, 532 (9th Cir. 2008) (affirming district court's dismissal of a complaint without leave to amend where amendment would have

1    been futile).

2    **IV.    <u>ARGUMENT</u>**

3           **A.      Plaintiff Has Not Adequately Alleged Reliance on Specific Representations.**

4           Plaintiff ignored the Court's order specifically requiring that Plaintiff "set forth in chart form

5    the misstatements that Plaintiff challenges on a numbered, statement-by-statement basis: (1) the

6    challenged statement; (2) the location and timing of the statement; (3) the Product(s) covered by the

7    statement; (4) the date on which Plaintiff witnessed the statement; and (5) the Product(s) Plaintiff

8    purchased on the basis of the statement." Order at p. 26.  The FAC should be dismissed because

9    Plaintiff did not comply with the court order requiring the chart.  This failure means that Plaintiff has

10   not remedied the fatal defect in her original pleading because she still has not alleged which specific

11   advertisement(s) she relied upon, which, if any, advertisements were material to her in making her

12   purchases, when she allegedly made the specific purchases, and where she allegedly made them, as

13   required by this Court and Rule 9(b).

14          As this Court has already held, Rule 9(b)'s heightened pleading requirement applies to

15   Plaintiff's CLRA, FAL, and UCL claims because all three of these claims are based on Defendant's

16   allegedly fraudulent course of conduct.  *See Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1125 (9th Cir.

17   2009) ("[W]e have specifically ruled that Rule 9(b)'s heightened pleading standards apply to claims

18   for violations of the CLRA and UCL."); *Brazil v. Dole Food Co., Inc.*, 935 F. Supp. 2d 947, 963

19   (N.D. Cal. 2013) (applying Rule 9(b)'s heightened pleading standard to FAL claims for misleading,

20   deceptive, and untrue advertising).  When CLRA, FAL, and UCL claims are premised on misleading

21   advertising or labeling, Rule 9(b) requires the plaintiff to allege "the particular circumstances

22   surrounding [the] representations" at issue.  *Kearns*, 567 F.3d at 1126.  To properly plead fraud with

23   particularity under Rule 9(b), "a pleading must identify the who, what, when, where, and how of

24   the misconduct charged, as well as what is false or misleading about the purportedly fraudulent

25   statement, and why it is false."  *Davidson*, 889 F.3d at 964 (quoting *Cafasso*, *U.S. ex rel. v. Gen.*

26   *Dynamics C4 Sys., Inc.*, 637 F.3d 1047, 1055 (9th Cir. 2011)).  "[A] plaintiff does not satisfy

27   Rule 9(b) when the plaintiff generally identifies allegedly misleading statements but fails to

28   specify which statements the plaintiff actually saw and relied upon."  *In re Arris Cable Modem*

*Consumer Litig.*, No. 17-CV-01834-LHK, 2018 WL 288085, at \*8 (N.D. Cal. Jan. 4, 2018); *see also Pirozzi v. Apple Inc.*, 913 F. Supp. 2d 840, 850 (N.D. Cal. 2012) (dismissing a complaint for failure to meet Rule 9(b) where plaintiff failed to provide the particulars of her own experience in reviewing or relying upon any of the allegedly misleading statements, including that she did not specify when she reviewed any of them, but claimed that she relied upon them in purchasing products from the defendant).

Plaintiff still does not plead which, if any, of the advertisements Plaintiff actually saw or relied upon in deciding to purchase the Bagel.  Instead, Plaintiff again alleged that at unspecified times "[d]uring the class period" Plaintiff purchased unspecified "Panera products," "including Whole Grain Bagels[.]"  FAC, ¶ 66.  This is wholly inadequate.  The class period reaches back for four years, to 2015.  A four-year window does not satisfy the "when" required by Rule 9(b) nor this Court's mandate that Plaintiff state "the date on which Plaintiff witnessed the statement."  Order at 26:6.

Nor does Plaintiff allege "the challenged statement" or "the location and timing of the statement," as instructed by this Court.  Order at 26:5-6.  Instead, as in her initial Complaint, Plaintiff makes only rote allegations that she "saw and believed the in-store signage representing that all foods sold there were '100% clean.'"  *Id.*  ¶ 67.  Plaintiff's failure to specify which specific statements she saw and relied upon, and when, is even more significant given that Plaintiff has changed the representative marketing materials alleged in her FAC.  Compare ECF No. 1 at pp 5-6 to ECF No. 41, FAC, at pp. 5-7.  Plaintiff's new photographs of Panera's alleged representations in her FAC are in different formats (sign, bag, t-shirt), and she never alleges that any of these photographs are in fact the "in-store signage" that she allegedly relied upon prior to making her purchases.  For example, one of the photographs included in the FAC appears to depict the back of an employee's t-shirt, but Plaintiff never alleges when or where she saw this employee, or whether she ever saw the back of the t-shirt prior to making her purchase.  None of the images feature the Bagel.  FAC at pp. 5-7.  As this Court has already found, Plaintiff's vague reference to "ubiquitous" "in-store signage" is entirely insufficient to demonstrate which representation she found to be material in making her purchases.

Further, Plaintiff still does not provide any information about ***when*** she allegedly viewed the advertisements or ***where*** she viewed them.  *See* Order at p. 21.  Plaintiff identified three Panera

locations, but did not state which location, if any, had any specific advertisement that she relied upon. *See* FAC ¶ 66. The FAC is devoid of any facts describing Plaintiff's particular experience. The FAC "fails to give [Defendant] the opportunity to respond to the alleged misconduct." *Kearns*, 567 F.3d at 1126; *see also Semegen v. Weidner*, 780 F.2d 727, 731 (9th Cir. 1985). As such, it should be dismissed for failure state a plausible claim as it is deficiently pled under Rule 9(b). *See Kearns*, 567 F.3d at 1126 (dismissing claims where plaintiff failed to specify which ads or sales materials he saw or when he was exposed to them).

### B.   Plaintiff Has Not Alleged Facts That Support The *In Re Tobacco II* Exception.

As this Court has held, Plaintiff's allegation that Panera's "representations are ubiquitous" (FAC ¶ 16) is insufficient to establish that *In re Tobacco II* should apply. And, Plaintiff has not, and cannot, allege facts that Panera's campaign approaches the "longevity and pervasiveness of the marketing at issue in *Tobacco II*." *Delacruz v. Cytosport, Inc.,* 2012 WL 1215243, at *8 (N.D. Cal. Apri. 11, 2012). Plaintiff now alleges that the first allegedly false claim was on January 13, 2017 (FAC ¶ 14), thus, at most, the campaign has been in effect for two years, substantially less than the decades of the campaign at issue in *Tobacco II*. *See Bronson v. Johnson & Johnson, Inc.,* 2013 WL 1629191, at *3 (N.D. Cal. Apr. 16, 2013) (finding that plaintiffs could not rely on *In re Tobacco II* unless they alleged an advertising campaign that was similarly extensive and lengthy); *Haskins v. Symantec Corp.*, No. 13-CV-01834-JST, 2014 WL 2450996, at *2 (N.D. Cal. June 2, 2014), aff'd, 654 F. App'x 338 (9th Cir. 2016) (finding that an approximately two-year campaign "[fell] well short of the 'decades-long' campaign in *Tobacco II*, the length of which made it 'unreasonable' to demand that the plaintiff identify a specific representation she actually viewed."). Moreover, Plaintiff did not even allege how she was exposed to the advertising campaign. *Haskins*, 2014 WL 2450996, at *2 (noting that a factor in determining application of the *In re Tobacco II* exception is whether plaintiff pleads "with particularity, and separately, when and how each named plaintiff was exposed to the advertising campaign[.]").

Furthermore, this Court has already found that Plaintiff's allegations are even less robust

than the ones at issue in *PETA v. Whole Foods Mkt. Cal.*, 2016 WL 362229 (N.D. Cal. Jan. 29, 2016), in which that court found were insufficient to satisfy the *In re Tobacco II* exception. There, the court found that plaintiffs' allegations that defendant "'inundated' customers with signs, placards, and napkins over a four year period" were insufficient to satisfy *the In re Tobacco* exception. *Id.* at *5.  Despite the fact that plaintiff alleged a four-year campaign, the court found that it was not clear from the complaint which signs and placards were deceptive advertising, over what time period the particular advertisements were placed in the store or when plaintiff was exposed to them.  *See id.* at *5.

The requisite specificity is lacking here too.  While Plaintiff alleges that Panera's marketing includes "a television commercial, billboards, and T-shirts worn by staff" she never alleges that she was exposed to any of those representations.  She alleges that "[w]hen she entered these Panera retail outlets" she "saw and believed the in-store signage," but it is entirely unclear from her allegations when or how many times this occurred, or even what specific signage she saw.  Plaintiff does not allege the frequency with which she was purportedly exposed to *any* of Panera's alleged misrepresentations.  The most she did was to allege generally that she purchased Panera's products "during the class period."  FAC ¶ 66.  The class period, by Plaintiff's definition, begins two years before the first allegedly false advertisement at issue, which Plaintiff claims is January 2017.  Further, Plaintiff still does not describe specifically where the signage was displayed.  Order at p. 24 (noting that Plaintiff did not describe the location of the alleged misstatements with any specificity in the initial Complaint).  Plaintiff only alleged generally that the in-store representations are "throughout Panera's physical locations" or "in Panera locations." *See* FAC ¶¶ 16, 17.

Indeed, Plaintiff does nothing more than allege that Panera declared in January 2017 that its bread menu was 100% clean, that it has since continued to represent that "all of the food it sells in its retail outlets . . . are 100% clean," and that it is "ubiquitous" at the point of sale of the Products.  FAC ¶¶ 14-16.  In short, Plaintiff makes the exact same allegation she made in her original Complaint, except she has shortened the time period of such advertising from allegedly 4 years to just 2 years.  Plaintiffs allegations provide insufficient details to plead an advertising

1    campaign of the necessary "longevity and pervasiveness" required to invoke *In re Tobacco II*.

2    *See Anderson v. SeaWorld Parks and Entm't, Inc.*, 2016 WL 8929295, at *8 (N.D. Cal. Nov. 7,

3    2016) (rejecting applicability of *In re Tobacco II* in part because plaintiff's allegations were too

4    vague and did not specify dates, or even timeframes, during which plaintiff was exposed to the

5    campaign).

6    **C.    Plaintiff's Complaint Should Be Dismissed Because No Reasonable Consumer
             Would Be Misled By Panera's Definition Of "100% Clean."**

7

8          Plaintiff's claims under the CLRA, FAL, and UCL all fail because they do not plausibly

9    allege conduct that would mislead reasonable consumers.  Whether a practice is false or

10   misleading under the CLRA, FAL, and UCL is determined by "show[ing] that 'members of the

11   public are likely to be deceived.'"  *Williams v. Gerber Prod. Co.*, 552 F.3d 934, 938 (9th Cir.

12   2008) (quoting *Freeman v. Time, Inc.*, 68 F.3d 285, 289 (9th Cir. 1995)).  "'[W]here a court can

13   conclude as a matter of law that members of the public are not likely to be deceived by the

14   product packaging, dismissal is appropriate.'"  *Gitson*, 2013 WL 5513711, at *6 (citation

15   omitted); *see also In re 100% Grated Parmesan Cheese Mktg. & Sales Practices Litig.*, 275 F.

16   Supp. 3d 910, 921 (N.D. Ill. 2017) [*hereinafter Parmesan Cheese*] ("It therefore 'is well settled

17   that a court may determine as a matter of law that an allegedly deceptive advertisement would not

18   have misled a reasonable consumer'" (citation omitted)).

19         In order to survive a motion to dismiss, there must be "'more than a mere possibility that

20   [a] label might conceivably be misunderstood by some few consumers viewing it in an

21   unreasonable manner.  [T]he reasonable consumer standard requires a probability that a

22   significant portion of the general consuming public . . . , acting reasonably in the circumstances,

23   could be misled.'"  *Parmesan Cheese*, 275 F. Supp. 3d at 921 (quoting *Ebner v. Fresh, Inc.*, 838

24   F.3d 958, 965 (9th Cir. 2016)) (analyzing California's CLRA, FAL, and UCL).

25         Here, no reasonable consumer would understand that "100 % clean," as used and defined

26   by Panera in its ads, means that its food is free of any trace of glyphosate residue, especially when

27   viewing the representation as a whole, as the law requires.  *Id.* (noting that the court must look to

28   "the totality of the information made available to the plaintiff").  "[E]ven if a statement on a

package or advertisement might be ambiguous or unclear in isolation, 'the presence of a disclaimer or similar clarifying language may defeat a claim of deception.'" *Id.* at 922 (quoting *Fink v. Time Warner Cable*, 714 F.3d 739, 741 (2d Cir. 2013)); *see also Freeman*, 68 F.3d at 290 ("Any ambiguity that [the plaintiff] would read into any particular statement is dispelled by the promotion as a whole."). If "context can cure the ambiguity," the claim is defeated. *Parmesan Cheese*, 275 F. Supp. 3d at 922 (citing and reconciling *Williams*, 552 F.3d at 939). The marketing must be viewed as a whole to determine whether a vague and ambiguous term, like "clean," is reasonably susceptible of the meaning Plaintiff alleges. *Id.* at 921.

### 1. Panera Has Clearly And Conspicuously Defined For Consumers What It Means By "100% Clean."

As is evident from Plaintiff's own photographs, Panera defines—and represents to consumers in store—that "100% clean" means: (1) "no artificial flavors, sweeteners, preservatives" and "no colors from artificial sources." *See* FAC at p. 7. Plaintiff alleges that neither Panera's website nor its retail outlets "clarify that artificial biocide residue is present in the Products despite the '100% clean' marketing claims." *Id.* ¶ 31. This definition even appears in one of the photographs in Plaintiff's FAC. FAC at p. 7.

But Plaintiff ignores the definition of clean found both on Panera's in-store signage and on its website, and previously alleged by Plaintiff herself in her original Complaint.[5] *See* ECF No. 1, ¶¶ 16, 17.[6] Because Panera has provided consumers with its definition of 100% clean on

---

[5] *See* Panera Bread, *What Does Clean Food Mean to Panera*, Food Promise: Clean, (2019), https://www.panera bread.com/en-us/our-beliefs/our-food-policy/clean-ingredients.html ("100% of our food is 100% clean. That means no artificial preservatives, sweeteners, flavors and no colors from artificial sources.").

[6] In an apparent attempt to avoid Panera's definition of clean, Plaintiff has removed certain advertisements and allegations that were included in her initial complaint and added some which she presumably knew about prior to filing her original Complaint, but did not include with her initial filing. *Compare* ECF No. 1, ¶¶16-17, with FAC, ¶¶ 17-18. Allegations in an amended complaint should be consistent with and cannot contradict the allegations in the original complaint. *See, e.g.*, *Reddy v. Litton Indus., Inc.*, 912 F.2d 291, 297 (9th Cir. 1990) (affirming dismissal with prejudice); *Airs Aromatics, LLC v. Opinion Victoria's Secret Stores Brand Mgmt., Inc.*, 744 F.3d 595, 600 (9th Cir. 2014) (affirming dismissal with prejudice); *Bradley v. Chiron Corp.*, No. C 94-04342 CW, 1996 WL 441022, at *3 (N.D. Cal. July 15, 1996), *aff'd*, 136 F.3d 1317 (Fed. Cir. 1998) (granting a motion to dismiss where plaintiff's amended complaint contained contradictory allegations and noting that "plaintiff could not, in good faith, have so diametrically reversed his recollection and position between the time of the filing of his original complaint and that of his second amended pleading."). The court can consider omitted prior

the ads asserted in the FAC (and on its website to the extent those representations were relied on by Plaintiff prior to her purchases)—which makes no claims regarding pesticides or glyphosate— a reasonable consumer would not understand Panera's "100% clean" ads to mean free of glyphosate residue.  Glyphosate is not an artificial color, sweetener, flavor, or preservative.[7] Thus, the basic premise underlying all of Plaintiff's claims—that the alleged presence of trace amounts of glyphosate renders Panera's statements false—does not exist.

### 2. Clean Has No Generally Accepted Meaning With Respect To Food Outside Of Panera's Definition, And Cannot Reasonably Mean The Complete Absence Of Glyphosate Residue, Which Is Not Alleged To Exceed Federal Tolerances.

Even if Panera's definition of clean—as shown in the ads in Plaintiff's FAC—is not enough to inform consumers what it means by clean in its "100% clean" advertisements, Plaintiff's proposed definition of clean, "free of artificial preservatives, coloring, irradiation, synthetic pesticides, fungicides, ripening agents, fumigants, drug residues and growth hormones," (*id.* ¶ 20) is not a definition that the reasonable consumer would construe.  The term "clean" means free from dirt.[8]  This has nothing to do with trace chemical residues.  The FAC does not allege the amount of glyphosate in the Bagel or that the glyphosate renders the Bagel unsafe for consumption, merely that the Bagel contains glyphosate residue.[9]  *See Parks v. Ainsworth Pet Nutrition, LLC*, 377 F. Supp. 3d 241, 247 (S.D.N.Y. 2019) (taking issue with plaintiffs' absolutist stance while failing to allege the amount of glyphosate found or whether it is harmful in litigation

---

allegations in deciding a motion to dismiss an amended complaint.  *See, e.g.*, *Bay Area Surgical Mgmt., LLC v. Blue Cross Blue Shield of Minnesota Inc.*, No. 12-CV-0848-LHK, 2012 WL 2919388, at *11 (N.D. Cal. July 17, 2012) (Koh, J.).

[7] *See* EPA, Glyphosate ("EPA Actions and Regulatory History" section), https://www.epa.gov/ingredients-used-pesticide-products/glyphosate#actions [hereinafter EPA Glyphosate].

[8] Merriam Webster, Clean (December 10, 2019 3:56 PM), https://www.merriam-webster.com/dictionary/clean.

[9] Panera suspects that Plaintiff will allege that Panera's Bagel contains approximately 0.522-0.677 mg/kg of glyphosate because Plaintiff's counsel made this allegation in a similar complaint filed in the D.C. Superior Court.  *See* FAC ¶ 26, *Clean Label Project Foundation v. Panera, LLC*, No. 2019 CA 001898 B (D.C. Super. Ct. Mar. 22, 2019).  For perspective, 1 mg/kg is equivalent to 1 part-per-*million* ("ppm").  Thus, all of the chemical residues alleged in the FAC were present at levels well below 1 ppm, which translates to ***one ounce in 780,000 gallons of water*** (which is larger than an Olympic-size swimming pool).  *See* Ron F. Turco, *et al.*, *Interpreting Water Test Reports Part One: Inorganic Materials,* Water Quality, https://www.extension.purdue.edu/extmedia/wq/wq-5.html ("To arrive at ppm you would need to dissolve one ounce in 1,000,000 ounces or 7,800 gallons of water.").

brought by the same plaintiffs' counsel as in the present action).  For Plaintiff, clean purportedly must mean that a product is completely glyphosate free.  But, courts have found this definition unrealistic:

> [Plaintiff] asserts that the Products contain trace amounts of glyphosate, but not that the Products are composed of unnatural ingredients.  Moreover, Plaintiff does not set forth in his complaint the amount of glyphosate in the Products or whether that amount is harmful or innocuous.  He argues that "[if] glyphosate is in the Products at *any* level ... then the Products cannot be called 'Natural.'" . . . But a reasonable consumer would not be so absolutist as to require that "natural" means there is no glyphosate, even an accidental and innocuous amount, in the Products.

*Id.* at 247–48 (emphasis in original) (addressing glyphosate in "natural" products and dismissing the complaint).  The same result is appropriate for the term "clean" as used in Panera's "100% clean" advertisements.

### a. The Dictionary Definition Of "Clean" Shows That The Term is Ambiguous in the Abstract.

Even assuming that Panera did not define "clean" in its "100% clean" ads (which it clearly does), Plaintiff's conclusory assertion is not the common understanding of the definition of "clean" and is therefore unreasonable.  In the abstract, the term is inherently ambiguous.  Merriam Webster Dictionary includes nine alternative definitions of "clean" when used as an adjective, varying from "free from dirt or pollution" to "unadulterated, pure" to "relatively free from error or blemish."[10]  These definitions demonstrate that clean has no single meaning.  While clean can mean "pure," other definitions allow greater leniency, suggesting that the definition is met as long as it is "relatively free" of an unwanted item.[11]  In the context of food, the meaning of clean, in the abstract, could reasonably be interpreted as relating to whether the food was washed, whether it was prepared in a clean environment, or to describe the ingredients or contents of the food product.  With no generally accepted meaning, it is unreasonable to expect a consumer to understand "100% clean" to mean free of any trace of glyphosate residue, even where the amount

---

[10]  Merriam Webster, Clean (December 10, 2019 3:56 PM), https://www.merriam-webster.com/dictionary/clean.
[11]  *Id.*

CROWELL & MORING LLP
ATTORNEYS AT LAW

is much lower than federal standards in food.  *See Parmesan Cheese*, 275 F. Supp. 3d at 923 (granting a motion to dismiss in part because the phrase "100% Grated Parmesan Cheese" was susceptible to many meanings such that the label was not deceptive because reasonable consumers "need more information before concluding that the labels promised only cheese and nothing more" and they would know to look at the ingredient list).  Even ignoring the clear definition of "100% clean" in the ads in Panera stores, there is no basis to find that a reasonable consumer would understand "100% clean" to mean free of any trace of, specifically, glyphosate.

> **b.      The Realities Of The Food Production And Its Regulations Support That "100% Clean" Does Not Ban All Glyphosate.**

Moreover, it is unreasonable to define "100% clean" as the complete absence of glyphosate because the use of herbicides is widespread.  *See Axon v. Citrus World, Inc.*, 354 F. Supp. 3d 170, 183 (E.D.N.Y. 2018) (dismissing consolidated class action with prejudice for failure to state a claim in glyphosate litigation over "natural" product brought by the same plaintiff's counsel that brought the present action); *Parks*, 377 F. Supp. 3d at 247 (finding it unreasonable for a consumer to be "so absolutist as to require" that "natural" means a product is free of glyphosate, "even an accidental and innocuous amount.").  Plaintiff concedes that glyphosate is the most commonly used herbicide.  FAC ¶ 22, n.7.  And, glyphosate is federally-approved and specifically registered for use on agricultural crops.  Glyphosate; Pesticide Tolerances, 62 Fed. Reg. 17,723-01, 17,725-26 (Apr. 11, 1997).  Indeed, federal regulations acknowledge that growers apply glyphosate to crops and, therefore, permit residues in cereal grains used for food (like the Products) at levels at or below 30 ppm.  40 C.F.R. § 180.364(a)(1).[12]  Clearly, due to the pervasiveness of glyphosate in agriculture, it is not reasonable to expect that no amount of glyphosate residue may make its way into food products. *In re Gen. Mills Glyphosate Litig.*, No. 16-2869 (MJD/BRT), 2017 WL 2983877, at *6 (D. Minn. July 12, 2017), *appeal dismissed*, No. 17-2797, 2017 WL 7668595 (8th Cir. Oct. 31, 2017) ("It

---

[12]  40 C.F.R. section 180.1(e) further provides that processed foods created from raw agricultural commodities are considered safe so long as "[t]he concentration of the pesticide chemical residue in the processed food is not greater than the tolerance prescribed for the pesticide chemical residue on the raw agricultural commodity."

would be nearly impossible to produce a processed food with no trace of any synthetic molecule.") (litigation regarding glyphosate brought by the same plaintiff counsel as in the present action in which the court granted a motion to dismiss a consolidated class action complaint with prejudice because plaintiff failed to assert a plausible claim).  Federal regulations of organic foods recognize as much.  Federal regulators have found that glyphosate is so pervasive in soil and crops[13] that they have expressly permitted the presence of comparable trace amounts even in foods bearing the more stringent "organic" label.  *See* 7 U.S.C. § 6518(k)(5) (recognizing that, as a result of "unavoidable residual environmental contamination," trace levels of pesticides may be present in foods marketed as organic); 7 C.F.R. § 205.671 (establishing pesticide residue thresholds for foods marketed as organic).  "Organic" foods are allowed to contain chemical pesticide residue if it is less than 5 percent of the EPA tolerance level.  65 Fed. Reg. 80,548-01, 80,629 (Dec. 21, 2000).  Here, that would amount to 1.5 ppm of glyphosate. Panera does not advertise its Whole Grain Bagel as "organic."  Rather, it labels its food as "clean" and specifically defines that term.  If food labeled as "organic" is allowed to contain trace amounts of glyphosate, surely food labeled as "clean" should be no more restrictive.

### c.      Courts Regularly Dismiss Cases Such as This.

Common-sense realities have led numerous courts, tasked with considering whether consumers would be deceived by representations based on the presence of trace amounts of glyphosate, to dismiss cases based on facts similar to those alleged in here.  While courts have not addressed these types of allegations in the context of representations regarding "clean," numerous courts have held that no reasonable consumer would be deceived by products labeled "natural" simply because they contained glyphosate residue.  *See Parks*, 377 F. Supp. 3d at 247-48

---

[13]  Due to its widespread use, glyphosate is not only pervasive in soil, but also in the air and rain. *See, e.g.*, Michael S. Majewski et al., *Pesticides in Mississippi Air and Rain: A Comparison Between 1996 and 2007*, 33 Envt'l Toxicology & Chem. 1283-93 (2014), *available at* https://archive.usgs.gov/archive/sites/ms.water.usgs.gov/publications/ETC_Majewski_2014_pr eprint.pdf (finding glyphosate and its byproduct in over 75% of tested air and rain samples); Feng-chih Chang et al., *Occurrence and Fate of the Herbicide Glyphosate and its Degradate Aminomethylphosphonic Acid in the Atmosphere*, 30 Envt'l Toxicology & Chem. 548-55 (2011), *available at* https://foodfreedom.files.wordpress.com/2011 /08/chang_2011_glyphosate-in-air.pdf (detecting glyphosate in between 60% and 100% of air and rain samples).

(dismissing plaintiff's claims where "[t]he presence of negligible amounts of glyphosate in a dog food product that do not have harmful, 'toxic' or 'carcinogenic' effects is not likely to affect consumers' decisions in purchasing the product and is thus not material"); *Axon*, 354 F. Supp. 3d 170, 182-84 ("Because the court concludes that it is not plausible to allege that a reasonable consumer would interpret the brand label 'Florida's Natural' as meaning that the product contains no traces of glyphosate, plaintiff's . . . claims are dismissed."); *Gen. Mills Glyphosate*, 2017 WL 2983877, at *5-*6 ("The [c]ourt concludes that [p]laintiffs have failed to plausibly allege that the statement 'Made with 100% Natural Whole Grain Oats' means, or could be interpreted by a reasonable consumer to mean, that there is no trace glyphosate in Nature Valley Products."). And at least one court has also found that, with respect to CLRA, FAL, and UCL claims based on glyphosate residue, "[t]he representation [that a product is 'natural'] . . . cannot plausibly be interpreted to be more restrictive with regard to synthetic residue than the standard for labeling a product as 'organic' under federal law." *Id*. at *6. The same logic applies here—more so since "clean" in the abstract is less commonly understood than "natural" or "organic."

Common understanding of the term "clean," the farming realities, federal regulations on glyphosate levels, and glyphosate case law all support the conclusion that Plaintiff's FAC should be dismissed because her proposed definition of "100% clean" as encompassing only foods that are entirely free from trace molecules of any "artificial preservatives, coloring, irradiation, synthetic pesticides, fungicides, ripening agents, fumigants, drug residues and growth hormones," (FAC ¶ 20), is unreasonable. Plaintiff essentially contends that the word "clean" cannot even be used to describe a product made from otherwise natural source crops where those crops may have picked up trace molecules from the environment of *any* of these many categories of materials at any point from growth, through harvesting, production, procurement, transportation, storage, or sale. This is an incomprehensible and impossible standard at odds with any reasonable consumer understanding of what "clean" means. It is also in direct contradiction to the express definition of "100% clean" on the ads at issue in this case.

### 3.      Plaintiff's Claims Based On Panera's Alleged Omissions Fail.

Plaintiff has also alleged that Panera has "false, misleading, and deceptive representations,

1    and omitted the information that would counter them, knowing that consumers would rely upon

2    the representations and omissions in purchasing the Products." *Id.* ¶ 46.  But, "California courts

3    have generally rejected a broad obligation to disclose, except for omissions that are contrary to a

4    representation actually made by the defendant, or...omission[s] of a fact the defendant was

5    obligated to disclose." *Hodsdon v. Mars, Inc.*, 162 F. Supp. 3d 1016, 1024 (N.D. Cal. 2016),

6    *af''d*, 891 F.3d 857 (9th Cir. 2018) (internal marks omitted).  An obligation is generally found

7    only where there is a safety risk to consumers.  *See Smith v. Ford Motor Co.*, 462 F. App'x 660,

8    663 (9th Cir. 2011) ("where a [] claim is predicated on a manufacturer's failure to inform its

9    customers . . . , the risk posed by such asserted defect [could not] be merely economic cost of the

10   product's repair but must constitute a safety concern.").

11        Plaintiff's claims based on Panera's alleged omissions cannot stand because Panera's

12   alleged omissions are not contrary to its representations and are therefore not actionable.

13   Whether or not there are trace amounts of glyphosate in Panera's products does not alter the fact

14   that, as Panera represents, there are no artificial colors, preservatives, sweeteners, flavors or

15   colors from artificial sources in its products.  *See Hodsdon*, 891 F.3d at 861 ("[the] actionable []

16   omission must be contrary to a representation actually made by the defendant . . .").  Additionally,

17   there is no safety risk to consumers that would trigger a disclosure requirement because, as

18   Plaintiff concedes, there is no known health risk associated with consuming trace amounts of

19   glyphosate.  *See* FAC ¶¶ 29, 30.  Plaintiff's allegations of mere "suspicion" regarding the health

20   effects on glyphosate are too speculative to require affirmative disclosure.  *See id* ¶ 29

21   ("detrimental effects that glyphosate *may* have"); *id.* ¶ 30 ("*suspected* health concerns"); *Smith*,

22   462 F. App'x at 663 (granting summary judgment on CLRA claims where the "safety" concerns

23   raised by plaintiffs were too speculative, as a matter of law, to amount to a safety issue giving rise

24   to a duty of disclosure).

   **D.    Plaintiff Is Not Entitled To Injunctive Relief Because She Fails To Allege**
25   **Future Harm.**

26        In order to obtain injunctive relief, Plaintiff must show that she has standing under

27   Article III.  *See Bates v. United Parcel Serv., Inc.*, 511 F.3d 974, 985 (9th Cir. 2007).  Because

28

injunctive relief is a prospective remedy, "'the threatened injury must be *certainly impending* to constitute injury in fact' and 'allegations of *possible* future injury are not sufficient.'" *Davidson*, 889 F.3d at 967 (finding that plaintiff "adequately alleged . . . future harm caused by [defendant's] allegedly false advertising" because she sufficiently alleged that she "continue[d] to desire to purchase [the product.]); *see also Brenner v. Procter & Gamble Co.*, No. SACV161093JLSJCG, 2016 WL 8192946, at *4 (C.D. Cal. Oct. 20, 2016) (granting a motion to dismiss plaintiff's request for injunctive relief where nothing in the complaint suggested that plaintiff would purchase the products at issue again if they were properly labeled).  A plaintiff lacks standing to seek injunctive relief if she fails to state plausible allegations of future harm. *See Davidson*, 889 F.3d at 969 (citation omitted).  As this Court has already found, merely alleging the possibility of future injury because the Plaintiff *may* purchase the products in the future is insufficient.  Order at p. 16.  Plaintiff still fails to allege that she *will* purchase the Bagel in the future; instead she alleges that she "would like to be able to purchase food items that comport with '100% clean'" but she "is unable to make these purchases." FAC ¶ 71.  Plaintiff's unwillingness to purchase the Bagel in the future is not related to how the Bagel is labeled, but rather driven by Plaintiff's apparent desire to avoid any trace amount of glyphosate residue. Thus, even if the Bagel were labeled differently, Plaintiff would still not purchase a Bagel in the future, and Plaintiff is specifically alleging that she will not suffer any future harm.  Accordingly, Plaintiff's request for injunctive relief should be dismissed.

### E.     Plaintiff's Claims Regarding Any Other Products Should Be Dismissed Because She Fails To Allege They Are Substantially Similar.

Courts in the Northern District also routinely dismiss allegations regarding products plaintiffs did not purchase if they are not "substantially similar." *See, e.g.*, *Lanovaz v. Twinings N. Am., Inc.*, No. C-12-02646-RMW, 2013 WL 675929, at *2 (N.D. Cal. Feb. 25, 2013) (striking claims based on different labels or products as immaterial because plaintiff failed to adequately identify them); *Carrea v. Dreyer's Grand Ice Cream, Inc*., No. C 10-01044 JSW, 2011 WL 159380, at *3 (N.D. Cal. Jan. 10, 2011), *aff'd*, 475 F. App'x 113 (9th Cir. 2012) (dismissing claims as to one of defendant's products because plaintiff did not allege that he purchased the

product); *Granfield v. NVIDIA Corp.*, No. C 11-05403 JW, 2012 WL 2847575, at *6 (N.D. Cal. July 11, 2012) (finding Plaintiff lacked standing to assert claims based on alleged defects in computer models other than the one she specifically alleged she purchased).  A class representative can only have standing for "substantially similar" products if she suffered substantially the same injury.  *Coleman-Anacleto v. Samsung Elecs. Am., Inc.*, No. 16-CV-02941-LHK, 2016 WL 4729302, at *10 (N.D. Cal. Sept. 12, 2016) (Koh, J.).

Plaintiff seeks to represent a class of purchasers of Whole Grain Bread even though she did not purchase that product.  While Plaintiff has alleged the Whole Grain Bread has similar ingredients to the Bagel, she does not allege that it is substantially similar with regard to the misleading claims at issue – namely, that the Whole Grain Bread contains glyphosate residue.  FAC ¶ 27.  Plaintiff has only alleged that tests conducted on the Bagel showed glyphosate residue.  FAC ¶ 22.  There are no factual allegations to support that any product other than the Bagel contains glyphosate residue.  To the contrary, Plaintiff alleges that tests showed that other unidentified Panera products do ***not*** contain glyphosate residue.  FAC ¶ 69.

Plaintiff's allegations that the glyphosate is most likely found in the rolled oats contained in the Bagel and Whole Grain Bread is pure speculation – not a factual allegation – and contradicted by her prior allegations.  *See* FAC ¶ 28.  A court can consider allegations in an original complaint that are omitted in an amended complaint.  *See, e.g.*, *Bay Area Surgical Mgmt., LLC v. Blue Cross Blue Shield of Minnesota Inc.*, No. 12-CV-0848-LHK, 2012 WL 2919388, at *11 (N.D. Cal. July 17, 2012) (Koh, J.) (considering the allegations in plaintiff's original complaint in determining whether diversity jurisdiction was met); *see also Cole v. Sunnyvale*, No. C-08-05017 RMW, 2010 WL 532428, at *4 (N.D. Cal. Feb. 9, 2010) ("The court may also consider the prior allegations as part of its 'context-specific' inquiry based on its judicial experience and common sense to assess whether the Third Amended Complaint plausibly suggests an entitlement to relief[.]"); *Fasugbe v. Willms*, No. CIV. 2:10-2320 WBS, 2011 WL 2119128, at *5 (E.D. Cal. May 26, 2011) ("[P]laintiffs may alter their allegations in an amended complaint, but the court may properly consider the plausibility of the FAC in light of the prior allegations.").  Plaintiff's initial complaint included reference to the Oatmeal Raisin with Berries

Cookie and Greek Yogurt with Mixed Berries, both of which contain rolled oats, yet she did not include them in her FAC.  *See* Compl. ¶ 5 n.2; *see also* https://www.panerabread.com/en-us/menu-categories/pastries-and-sweets.html#oatmeal-raisin-with-berries-cookie; https://www.panerabread.com/en-us/menu-categories/breakfast-.html#greek-yogurt-with-mixed-berries.  Thus, Plaintiff has still failed to allege that the Whole Grain Bread is substantially similar and would cause substantially the same injury as the Bagel.  Therefore, Plaintiff's claims regarding any other products must be dismissed.

## V.    <u>CONCLUSION</u>

Plaintiff was already given the opportunity to amend her claims, with specific instructions from the Court on how to cure the deficiencies.  Plaintiff has failed to do so.  Thus, for the reasons set forth above, Panera respectfully requests that the Court dismiss Plaintiff's FAC, with prejudice.

Dated: December 11, 2019                              CROWELL & MORING LLP


                                                      ___*/s/ Valerie M. Goo*___
                                                      Valerie M. Goo

                                                      *Attorneys for Defendant*
                                                      PANERA, LLC