UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| BRIANNA TABLER,<br><br>            Plaintiff,<br><br>      v.<br><br>PANERA LLC,<br><br>            Defendant. | Case No. 19-CV-01646-LHK<br><br>**AMENDED ORDER GRANTING MOTION TO DISMISS WITH LEAVE TO AMEND**[1]<br><br>Re: Dkt. No. 44 |

Before the Court is Defendant Panera LLC's motion to dismiss.  ECF No. 44.  Having considered the submissions of the parties, the relevant law, and the record in this case, the Court GRANTS Defendant's motion to dismiss with leave to amend.

I.      **BACKGROUND**

   A.  **Factual Background**

Plaintiff Brianna Tabler is a citizen of Santa Clara County, California.  ECF No. 41 ¶ 65 ("FAC" or "First Amended Complaint").  Defendant Panera LLC is a limited liability company that was formed under the laws of New York and maintains headquarters in New York City.  *Id.*

_____

[1] This order supersedes ECF No. 53, which was vacated.

¶ 72.  Defendant manufactures, markets, and distributes sandwiches, baked goods, and other prepared foods, including the "Whole Grain Bagel" and "Whole Grain Bread" (the "Products"), in retail outlets in California.  *Id.* ¶¶ 4, 5.

Plaintiff alleges that Defendant falsely and deceptively labels and markets the Products as "100% clean."  *Id.* ¶¶ 4, 10.  According to Plaintiff, on January 13, 2017, Defendant "declared that the entire 'Panera Bread Menu is Now 100% Clean'" and "promoted the claim that '100% of our food is 100% clean' through its marketing, including a television commercial, billboards, and T-shirts worn by staff at its roughly 2,000 outlets."  *Id.* ¶ 14.  Defendant "has since continued to represent that all of the food it sells in its retail outlets, including the Products, are '100% clean,'" and that such representations "are ubiquitous at the point of sale of the Products—on bags, signs, and labels throughout Panera's physical locations."  *Id.* ¶¶ 15-16.  For example, Plaintiff indicates that "signs and placards" at Defendant's retail outlets display statements such as "100% of our food is 100% clean" and "All 100% clean."  *Id.* ¶ 17.  Other advertisements simply state that all food sold is "100% clean."  *Id.* ¶ 18.  Plaintiff provides several images of representative advertisements:




*Id.* ¶ 17.

Further, Plaintiff asserts that Defendant's bags and uniforms display statements such as,

United States District Court
Northern District of California

1  "100% clean food," encircled by the statement, "No artificial flavors, sweeteners, preservatives /

2  No colors from artificial sources."  *Id.* ¶ 18.  Plaintiff includes representative images of such

3  advertisements:




16  *Id.*  Additionally, Plaintiffs do not explain whether there are other "100% clean" advertisements

17  that differ from the proffered representative samples, and if so, how any those advertisements

18  differ.

19        Nonetheless, according to Plaintiff, Defendant's differing "representations are intended to,

20  and do, portray to consumers that, at the very least, the ingredients in the Products do not contain

21  residue of non-food items such as synthetic chemicals used during the ingredients' growing,

22  harvest, or processing."  *Id.* ¶ 19.

23        Notwithstanding these statements, Plaintiff alleges that the Products contain the residue of

24  glyphosate, a synthetic chemical.  *Id.* ¶¶ 21, 25.  Glyphosate is an artificial chemical derived from

25  the amino acid glycine.  *Id.* ¶¶ 23, 25.  Glyphosate was invented by the agrochemical and

26  agricultural biotechnology corporation Monsanto, which marketed the biocide under the trade

27  name "Roundup."  *Id.* ¶ 22.

28
Case No. 19-CV-01646-LHK
ORDER GRANTING MOTION TO DISMISS WITH LEAVE TO AMEND

According to Plaintiff, the fact that the Products contain glyphosate residue renders Defendant's statements that the Products are "100% clean" misrepresentations.  *Id.* ¶ 30.  Indeed, Plaintiff asserts that Defendant's statements indicate to reasonable consumers that the Products "do not contain residue of non-food items such as synthetic chemicals used during the ingredients' growing, harvest, or processing."  *Id.* ¶ 19.  Plaintiff claims that Defendant does not disclose that glyphosate residue is present in the Products on Defendant's website, packaging, signage, or in a biannual "Responsibility Report" that Defendant disseminates to provide information about the Products. *Id.* ¶¶ 31–38, 51.

Plaintiff alleges that Defendant is aware that the Products contain glyphosate residue and that Defendant is also aware of the source of the glyphosate residue in the production process.  *Id.* ¶¶ 40, 41.  Plaintiff asserts that Defendant purposefully fails to disclose this information in order to charge a premium from consumers, and in order to ensure that consumers do not cease purchasing the Products and switch to one of Defendant's competitors.  *Id.* ¶¶ 46–48.

As previously alleged in Plaintiff's initial complaint, Plaintiff purchased Defendant's Whole Grain Bagel, as well as other unspecified Products, at unspecified times during the class period from three different retail outlets located in California.  *Id.* ¶ 66.  Plaintiff alleges that in deciding to make these purchases, Plaintiff "saw and believed in-store signage representing that all of the foods sold there were '100% clean.'"  *Id.* ¶ 67.

### B.  Procedural History

On March 29, 2019, Plaintiff filed the instant putative class action complaint against Defendant and two related entities.  *Id.* ¶ 1.  The complaint alleges causes of action under: (1) California's Consumers Legal Remedies Act ("CLRA"), Cal. Civ. Code §§ 1750–1785; (2) California's False Advertisement Law ("FAL"), Cal. Bus. & Prof. Code § 17500 *et seq.*; and (3) California's Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code §§ 17200–17210.  *Id.* ¶¶ 82–112.  On May 15, 2019, Plaintiff filed a notice of voluntary dismissal of the two related entities.  ECF No. 5.  Thus, Defendant is the only remaining defendant in the instant case.  *Id.*

On July 10, 2019, Defendant filed a motion to dismiss, or in the alternative, to stay the

United States District Court
Northern District of California

instant case or strike portions of Plaintiff's complaint.  ECF No. 21.  On October 19, 2019, the Court granted Defendant's motion to dismiss with leave to amend and denied Defendant's request to stay and request to strike.  ECF No. 35.  First, the Court held that Plaintiff's claims were not expressly preempted by the Federal Food, Drug, and Cosmetic Act ("FDCA") as amended by the Nutrition Labeling and Education Act ("NLEA").  *Id.* at 8–11.  Second, the Court determined that the application of the primary jurisdiction doctrine was inappropriate and therefore refused to dismiss or stay the case on this basis.  *Id.* at 11–14.

The Court then proceeded to the merits of Plaintiff's claims.  The Court concluded that Plaintiff lacked Article III standing to pursue injunctive relief because as alleged in the initial complaint, Plaintiff only sought to "change . . . the current Products' representations, packaging, labels and marketing, or a reformulation of the Products so that the Products no longer contain glyphosate residue."  *Id.* at 15 (quoting Compl. ¶ 60).  However, even if some relief were granted and only the representations, packaging, labels, and marketing were changed, Plaintiff would still refuse to purchase the Products.  *Id.* at 15–16.  Additionally, Plaintiffs "allege[d] only the *possibility* of future injury arising from the fact that Plaintiff *may* purchase the Products in the future."  *Id.* at 16 (quotation marks omitted).

Furthermore, because the initial complaint sought to bring claims based on other, unspecified "bread products" that Plaintiff did not purchase and were not "substantially similar" to the purchased products, the Court held that Plaintiff lacked standing to bring these claims.  *Id.* at 16–19; *see id.* at 18 ("When a complaint fails to adequately allege how products a plaintiff purchased are in fact substantially similar to products that the plaintiff challenges, the Court must dismiss the complaint to the extent it seeks to bring claims on the basis of unpurchased products.").

Finally, the Court held that Plaintiff failed to state a CLRA, FAL, or UCL claim for purchased products because Plaintiff failed to satisfy Federal Rule of Civil Procedure 9(b)'s heightened pleading standard.  *Id.* at 19–25.  Plaintiff failed to specify "which, if any, of the 'representative' advertisements described in the complaint Plaintiff actually relied upon before"

United States District Court
Northern District of California

United States District Court
Northern District of California

1    purchasing any products. *Id.* at 21. "Nor d[id] Plaintiff provide any information about when

2    Plaintiff allegedly viewed Defendant's advertisements, or which ones Plaintiff found to be

3    material in making her purchases." *Id.* As a result, the complaint "fail[ed] to give [Defendant] the

4    opportunity to respond to the alleged misconduct." *Id.* (quotation marks omitted).

5          Indeed, Plaintiff "d[id] not dispute that the complaint fail[ed] to sufficiently plead reliance

6    on specific misstatements to satisfy the requirements of Rule 9(b)." *Id.* at 22. Rather, Plaintiff

7    argued that she did not need to allege reliance on a specific advertisement pursuant to *In re*

8    *Tobacco II*, 46 Cal. 4th 298 (2009). *Id.* The Court rejected Plaintiff's argument because

9    numerous courts, including this court, construed the *In re Tobacco II* exception narrowly. *Id.* at

10   23.

11         As the Court explained, "*In re Tobacco II* does not stand for the proposition that a

12   consumer who was never exposed to an alleged false or misleading advertising or promotional

13   campaign may bring a claim for relief." *Id.* (quotation marks omitted). "Rather, *In re Tobacco II*

14   stands for the narrower, and more straightforward proposition that, where a plaintiff has been

15   exposed to numerous advertisements over a period of decades, the plaintiff is not required to plead

16   with an unrealistic degree of specificity the particular advertisements and statements that she

17   relied upon." *Id.* (quotation marks and internal alterations omitted). Plaintiff "ma[de] no

18   allegation whatsoever concerning the duration or pervasiveness of Defendant's alleged advertising

19   campaign, which render[ed] *In re Tobacco II* wholly inapplicable." *Id.*; *see also id.* at 23 ("The

20   unadorned assertion that allegedly fraudulent representations are 'ubiquitous at the point of sale' is

21   insufficient to plead an advertising campaign of the necessary 'longevity and pervasiveness'

22   required to invoke *In re Tobacco II*.").

23         As a result, the Court granted Defendant's motion to dismiss but permitted Plaintiff leave

24   to amend. *Id.* at 24. The Court instructed Plaintiff that "to the extent that Plaintiff does not plead

25   the existence of an advertising campaign of the necessary 'extent and pervasiveness' to satisfy the

26   *In re Tobacco II* exception," Plaintiff must "set forth in chart form the misstatements that Plaintiff

27   challenges on a numbered, statement-by-statement basis: (1) the challenged statement, (2) the

28
6

location and timing of the statement; (3) the Product(s) covered by the statement; (4) the date on which Plaintiff witnessed the statement; and (5) the Product(s) Plaintiff purchased on the basis of the statement." *Id.* at 25.  Moreover, the Court notified that any "failure to cure deficiencies identified herein or in Defendant's motion to dismiss will result in dismissal of the deficient claims with prejudice." *Id.*

On November 27, 2019, Plaintiff filed the First Amended Complaint.  ECF No.41 ("FAC").  The FAC alleges the same three causes of action under the CLRA, FAL, and UCL. *Id.* ¶¶ 87–117.  As before, the FAC includes a number of representative advertisements but never specifies which particular advertisements Plaintiff saw and relied upon "in-store" when purchasing Panera products.  FAC ¶ 67.  Indeed, the FAC fails to comply with the Court's instruction requiring "Plaintiff to set forth in chart form the misstatements that Plaintiff challenges."  ECF No. 35 at 25.  Furthermore, the FAC also fails to explain when Plaintiff viewed any advertisements and instead only mentions that Plaintiff viewed some advertisements at unspecified times "[d]uring the class period" when purchasing Panera products at three different retail outlets located in California.  FAC ¶¶ 66, 67.

On December 11, 2019, Defendant filed a motion to dismiss Plaintiff's FAC.  ECF No. 44 ("Mot.").  On December 26, 2019, Plaintiff filed an opposition to Defendant's motion to dismiss. ECF No. 45 ("Opp.").  On January 2, 2019, Defendant filed a reply.  ECF No. 46 ("Reply").

## II.    LEGAL STANDARD

### A.  Motion to Dismiss Under Federal Rule of Civil Procedure 12(b)(6)

Rule 8(a)(2) of the Federal Rules of Civil Procedure requires a complaint to include "a short and plain statement of the claim showing that the pleader is entitled to relief."  A complaint that fails to meet this standard may be dismissed pursuant to Federal Rule of Civil Procedure 12(b)(6).  The United States Supreme Court has held that Rule 8(a) requires a plaintiff to plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable

Case No. 19-CV-01646-LHK
ORDER GRANTING MOTION TO DISMISS WITH LEAVE TO AMEND

United States District Court
Northern District of California

for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "The plausibility standard is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (internal quotation marks omitted). For purposes of ruling on a Rule 12(b)(6) motion, the Court "accept[s] factual allegations in the complaint as true and construe[s] the pleadings in the light most favorable to the nonmoving party." *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008).

The Court, however, need not "assume the truth of legal conclusions merely because they are cast in the form of factual allegations." *Fayer v. Vaughn*, 649 F.3d 1061, 1064 (9th Cir. 2011) (per curiam) (internal quotation marks omitted). Mere "conclusory allegations of law and unwarranted inferences are insufficient to defeat a motion to dismiss." *Adams v. Johnson*, 355 F.3d 1179, 1183 (9th Cir. 2004).

## B. Motion to Dismiss Under Federal Rule of Civil Procedure 9(b)

Claims sounding in fraud are subject to the heightened pleading requirements of Federal Rule of Civil Procedure 9(b). *Bly-Magee v. California*, 236 F.3d 1014, 1018 (9th Cir. 2001). Under the federal rules, a plaintiff alleging fraud "must state with particularity the circumstances constituting fraud." Fed. R. Civ. P. 9(b). To satisfy this standard, the allegations must be "specific enough to give defendants notice of the particular misconduct which is alleged to constitute the fraud charged so that they can defend against the charge and not just deny that they have done anything wrong." *Semegen v. Weidner*, 780 F.2d 727, 731 (9th Cir. 1985). Thus, claims sounding in fraud must allege "an account of the time, place, and specific content of the false representations as well as the identities of the parties to the misrepresentations." *Swartz v. KPMG LLP*, 476 F.3d 756, 764 (9th Cir. 2007). In other words, "[a]verments of fraud must be accompanied by 'the who, what, when, where, and how' of the misconduct charged." *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1106 (9th Cir. 2003) (citation omitted). The plaintiff must also plead facts explaining why the statement was false when it was made. *See In re GlenFed, Inc. Sec. Litig.*, 42 F.3d 1541, 1549 (9th Cir. 1994) (en banc), *superseded by statute on other grounds as stated in Marksman Partners, L.P. v. Chantal Pharm. Corp.*, 927 F. Supp. 1297 (C.D.

United States District Court
Northern District of California

1   Cal. 1996).

2       "When an entire complaint . . . is grounded in fraud and its allegations fail to satisfy the

3   heightened pleading requirements of Rule 9(b), a district court may dismiss the complaint . . . ."

4   *Vess*, 317 F.3d at 1107. A motion to dismiss a complaint "under Rule 9(b) for failure to plead

5   with particularity is the functional equivalent of a motion to dismiss under Rule 12(b)(6) for

6   failure to state a claim." *Id.*

7       **C. Leave to Amend**

8       If the Court determines that a complaint should be dismissed, the Court must then decide

9   whether to grant leave to amend. Under Rule 15(a) of the Federal Rules of Civil Procedure, leave

10  to amend "shall be freely given when justice so requires," bearing in mind "the underlying purpose

11  of Rule 15 to facilitate decisions on the merits, rather than on the pleadings or technicalities."

12  *Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000) (en banc) (alterations and internal quotation

13  marks omitted). When dismissing a complaint for failure to state a claim, "a district court should

14  grant leave to amend even if no request to amend the pleading was made, unless it determines that

15  the pleading could not possibly be cured by the allegation of other facts." *Id.* at 1130 (internal

16  quotation marks omitted). Accordingly, leave to amend generally shall be denied only if allowing

17  amendment would unduly prejudice the opposing party, cause undue delay, or be futile, or if the

18  moving party has acted in bad faith. *Leadsinger, Inc. v. BMG Music Publ'g*, 512 F.3d 522, 532

19  (9th Cir. 2008). At the same time, a court is justified in denying leave to amend when a plaintiff

20  "repeated[ly] fail[s] to cure deficiencies by amendments previously allowed." *See Carvalho v.*

21  *Equifax Info. Servs., LLC*, 629 F.3d 876, 892 (9th Cir. 2010). Indeed, a "district court's discretion

22  to deny leave to amend is particularly broad where plaintiff has previously amended the

23  complaint." *Cafasso, U.S. ex rel. v. Gen. Dynamics C4 Sys., Inc.*, 637 F.3d 1047, 1058 (9th Cir.

24  2011) (quotation marks omitted).

25  **III.   DISCUSSION**

26      In the motion to dismiss, Defendant contends that dismissal of Plaintiff's FAC is again

27  warranted because (1) the complaint does not adequately plead reliance with sufficient specificity

28

9

United States District Court
Northern District of California

1   to meet the heightened pleading standard of Federal Rule of Civil Procedure 9(b); and (2) no

2   reasonable consumer would understand Defendant's alleged statements to mean that the Products

3   are free of glyphosate residue.  Mot. at 7–18.  Additionally, Defendant asserts that Plaintiff is not

4   entitled to injunctive relief because she fails to allege future harm and that any claims predicated

5   on products that Plaintiff did not purchase should be dismissed because Plaintiff fails to allege

6   substantial similarity between the products.  Mot. at 18-21.

7       The Court concludes that the FAC again fails to adequately plead reliance on specific

8   misstatements and that the FAC does not sufficiently plead that the *In re Tobacco II* exception

9   applies.  Accordingly, the Court need not reach Defendant's other arguments and dismisses

10  Plaintiff's FAC, but with leave to amend.

11      **A.  Plaintiff does not adequately allege reliance on specific statements.**

12      As before, Defendant argues that Plaintiff "still does not plead which, if any, of the

13  advertisements Plaintiff actually saw or relied upon in deciding to purchase the [Whole Grain]

14  Bagel."  Mot. at 8.  As a result, Defendant claims that Plaintiff has not met Federal Rule of Civil

15  Procedure 9(b)'s pleading standard.  *Id.*  Plaintiff contends that it has met Rule 9(b)'s heightened

16  pleading standard.  In the alternative, Plaintiff argues if the FAC has not adequately pleaded

17  reliance on a specific misrepresentation, the FAC has nonetheless satisfied an exception under

18  California law established by *In re Tobacco II Cases*, 46 Cal. 4th 298 (2009), which permits

19  Plaintiff to plead her claims without alleging reliance on any specific representations.  Opp. at 3–

20  11.

21      As the Court previously concluded, Plaintiff fails to allege reliance on Defendant's

22  representations with the specificity required by Federal Rule of Civil Procedure 9(b).  Further, as

23  before, the *In re Tobacco II* exception that Plaintiff invokes is narrow and unavailable under the

24  facts alleged.  The Court first addresses Plaintiff's failure to plead reliance with sufficient

25  specificity to satisfy the standard set by Rule 9(b) before turning to the unavailability of the *In re*

26  *Tobacco II* exception to this standard.

27      **1.  Plaintiff fails to meet the heightened pleading standard of Federal Rules of Civil**

28

10

Procedure 9(b).

Federal Rule of Civil Procedure 9(b)'s heightened pleading requirement applies to Plaintiff's CLRA, FAL, and UCL claims because all three of these claims are based on Defendant's allegedly fraudulent course of conduct: Defendant's alleged misrepresentations that the Products are "100% clean." *See Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1125 (9th Cir. 2009) ("[W]e have specifically ruled that Rule 9(b)'s heightened pleading standards apply to claims for violations of the CLRA and UCL."); *Brazil v. Dole Food Co., Inc.*, 935 F. Supp. 2d 947, 963 (N.D. Cal. 2013) (applying Rule 9(b)'s heightened pleading standard to FAL claims for misleading, deceptive, and untrue advertising); *see also Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1106 (9th Cir. 2003) (stating that when a plaintiff "allege[s] a unified course of fraudulent conduct and rel[ies] entirely on that course of conduct as the basis of a claim . . . the claim is said to be 'grounded in fraud' . . . and the pleading of that claim as a whole must satisfy the particularity requirement of Rule 9(b)").

When CLRA, FAL, and UCL claims are premised on misleading advertising or labeling, Rule 9(b) requires the plaintiff to allege "the particular circumstances surrounding [the] representations" at issue. *Kearns*, 567 F.3d at 1126. This rule applies regardless of whether the statements at issue are misleading because they are affirmative misrepresentations or because they contain material omissions. *See, e.g.*, *Williamson v. Reinalt-Thomas Corp.*, 2012 WL 1438812, at *13 (N.D. Cal. Apr. 25, 2012) (citing *Kearns*, 567 F.3d at 1127, for the proposition that "a claim based on a nondisclosure or omission is a claim for misrepresentation in a cause of action for fraud, and it must be pleaded with particularity under Rule 9(b)").

To satisfy this standard, the allegations must be "specific enough to give defendants notice of the particular misconduct which is alleged to constitute the fraud charged so that they can defend against the charge and not just deny that they have done anything wrong." *Semegen*, 780 F.2d at 731. Thus, claims sounding in fraud must allege "an account of the time, place, and specific content of the false representations as well as the identities of the parties to the misrepresentations." *Swartz*, 476 F.3d at 764. In other words, "[a]verments of fraud must be

United States District Court
Northern District of California

United States District Court
Northern District of California

1    accompanied by 'the who, what, when, where, and how' of the misconduct charged." *Vess*, 317

2    F.3d at 1106 (citation omitted).  The plaintiff must also plead facts explaining why the statement

3    was false when it was made.  *See In re GlenFed*, 42 F.3d at 1549.  Put differently, "Rule 9(b)

4    requires that the plaintiff(s) identify specific advertisements and promotional materials" and

5    "allege when the plaintiff(s) were exposed to the materials."  *Janney v. Mills*, 944 F. Supp. 2d 806,

6    818 (N.D. Cal. 2013)).

7         Plaintiff's initial complaint, like the FAC, gave a number of representative advertisements.

8    Nonetheless, in its previous order granting Defendant's motion to dismiss with leave to amend, the

9    Court dismissed Plaintiff's CLRA, FAL, and UCL claims because Plaintiff failed to specify

10   "which, if any, of the 'representative' advertisements described in the complaint Plaintiff actually

11   relied upon before" purchasing any products.  ECF No. 35 at 21.  "Nor d[id] Plaintiff provide any

12   information about when Plaintiff allegedly viewed Defendant's advertisements, or which ones

13   Plaintiff found to be material in making her purchases."  *Id.*  As a result, the complaint "fail[ed] to

14   give [Defendant] the opportunity to respond to the alleged misconduct."  *Id.* (quotation marks

15   omitted).

16        The same is true of the FAC.  The FAC alleges that at unspecified times during the class

17   period starting in 2015, Plaintiff "purchased Panera products, including Whole Grain Bagels,"

18   multiple times from three of Defendant's retail outlets.  FAC ¶ 66.  Plaintiff also alleges that in

19   deciding to make these purchases, Plaintiff "saw and believed the in-store signage representing

20   that all of the foods sold there were '100% clean.'"  *Id.*

21        This is not enough to satisfy Rule 9(b).  First, as before, the FAC is still unclear as to

22   which specific advertisements Plaintiff actually saw and relied upon in deciding to purchase the

23   Whole Grain Bagel.  The Court specifically granted Plaintiff leave to amend to more specifically

24   allege which particular statement she saw, believed, and relied upon in making her purchasing

25   decision.  *Id.* at 25.  The Court, however, cautioned Plaintiff that "failure to cure" the complaint's

26   pleading deficiencies "will result in dismissal of the deficient claims with prejudice."  *Id.* at 26.

27        With this additional opportunity, Plaintiff merely alleges that she saw one of Defendant's

28
12

"100% clean" advertisements. *Id.* This is problematic because the FAC includes a number of representative "100% clean" advertisements with different language. One of those advertisements simply states "All 100% Clean." *Id.* ¶ 17. Another states "100% of our food is 100% clean." *Id.* To be sure, these statements appear substantially similar. Nonetheless, Plaintiff's two other representative samples contain different language. Those two advertisements, which account for half of Plaintiff's representative samples, appear to state that Defendants' products are "100% Clean Food: No artificial flavors, sweeteners, preservatives / No colors from artificial sources." *Id.* ¶¶ 17–18. Moreover, Plaintiff never alleges whether there are other "100% clean" advertisements that Plaintiff may have seen, believed, and relied upon, and if so, whether those advertisements differ from the other ones alleged in the FAC.

Plaintiff must plead which specific advertisements she saw, believed, and relied upon in order for the Court to assess how a "reasonable consumer" would view the different advertisements. Thus, Plaintiff's lack of specificity "fails to give [Defendant] the opportunity to respond to the alleged misconduct." *Kearns*, 567 F.3d at 1126; *see also Janney*, 944 F. Supp. 2d at 818 ("Rule 9(b) requires that the plaintiff(s) identify specific advertisements and promotional materials" and "allege when the plaintiff(s) were exposed to the materials . . . ."); *Swartz*, 476 F.3d at 764 (holding that claims sounding in fraud must allege "an account of the time, place, and specific content of the false representations as well as the identities of the parties to the misrepresentations").

Additionally, Plaintiff's failure to specify when she viewed Defendant's advertisements compounds the uncertainty. As was the case in the initial complaint, the FAC simply alleges that "[d]uring the class period"—that is, beginning as far back as 2015—Plaintiff "saw and believed the in-store signage representing that all of the foods sold there were '100% clean.'" FAC ¶¶ 66, 67. This is problematic because as the FAC itself alleges, Defendant's "100% clean" advertising campaign only began on January 13, 2017. *Id.* ¶¶ 14, 17. Thus, Plaintiff could not have relied on any of Defendant's "100% clean" advertisements in 2015 or 2016 before Defendant began its "100% clean" advertising campaign on January 13, 2017. Therefore, because Plaintiff does not

13

United States District Court
Northern District of California

1   explain which precise statement she relied upon in making her purchasing decisions or when

2   Plaintiff allegedly saw the relevant advertisements, Plaintiff has not given Defendant sufficient

3   notice to enable Defendant to mount a defense.  Thus, the FAC "fails to give [Defendant] the

4   opportunity to respond to the alleged misconduct."  *Kearns*, 567 F.3d at 1126; *see also Janney v.*

5   *Mills*, 944 F. Supp. 2d 806, 818 (N.D. Cal. 2013) ("Rule 9(b) requires that the plaintiff(s) identify

6   specific advertisements and promotional materials" and "allege when the plaintiff(s) were exposed

7   to the materials . . . .").

8       In summary, Plaintiff's pleading raises the same deficiencies that the Court previously

9   identified in its prior order.  ECF No. 35 at 20–22.  As explained above, Plaintiff again merely

10  identifies a range of representative advertisements that Plaintiff alleges to be misleading, but

11  Plaintiff provides no indication of which statements, if any, Plaintiff herself relied upon before

12  purchasing the unspecified Products.  *See In re Arris Cable Modem Consumer Litig.*, 2018 WL

13  288085, at *9 (N.D. Cal. Jan. 4, 2018) (dismissing complaint under Rule 9(b) because the

14  complaint identified "a range of statements" that were allegedly misleading, but plaintiffs did not

15  specify "which statements any of them saw or relied on in deciding to buy" products from the

16  defendant); *Ahern v. Apple*, 411 F. Supp. 3d 541, 564 (N.D. Cal. 2019) (dismissing fraudulent

17  concealment and UCL claim because "Plaintiffs have not specified which statements any of them

18  saw or relied on in deciding to buy the Apple computers" (quoting *In re Arris*, 2018 WL 288085,

19  at *9) (internal alterations omitted)).  Additionally, Plaintiff also fails to specify when she viewed

20  and relied on the advertisements in making her purchasing decisions.  *See Pirozzi v. Apple Inc.*,

21  913 F. Supp. 2d 840, 850 (N.D. Cal. 2012) (dismissing complaint under Rule 9(b) because

22  "[n]owhere in the [complaint] does Plaintiff specify when she was exposed to the statements or

23  which ones she found material to her decisions to purchase an Apple Device or App.").  These

24  failures undermine Defendant's ability to "defend against the charge."  *Semegen v. Weidner*, 780

25  F.2d 727, 731 (9th Cir. 1985).

26      As a result, as before, the Court concludes that Plaintiff fails to meet the heightened

27  pleading standard of Rule 9(b).  The Court proceeds to consider whether the *In re Tobacco II*

28

14

United States District Court
Northern District of California

exception nevertheless saves Plaintiff's complaint from dismissal.

**2. Plaintiff does not satisfy the *In re Tobacco II* exception.**

In the alternative, Plaintiff contends that the FAC "make[s] . . . allegations as to invoke the rule of *In re Tobacco II*." Opp. at 7 ("*In re Tobacco II* is not necessary to the survival of the [FAC] . . . . [but] [n]evertheless, the [FAC] does make such allegations as to invoke the Rule of *In re Tobacco II*."). The Court disagrees. *In re Tobacco II* does not apply to the instant case under the facts alleged in the FAC.

In *In re Tobacco II*, the California Supreme Court held that in narrow circumstances, a plaintiff may state a UCL claim for a fraudulent advertising campaign without alleging reliance on any specific misrepresentations. 46 Cal. 4th at 327. *In re Tobacco II* concerned a putative class of plaintiffs that brought a UCL claim against defendants for alleged misrepresentations concerning the safety of cigarettes. *Id.* at 327–28. In evaluating this claim, the California Supreme Court explained that when "a plaintiff alleges exposure to a long-term advertising campaign, the plaintiff is not required to plead with an unrealistic degree of specificity that the plaintiff relied on particular advertisements or statements." *Id.* Accordingly, the California Supreme Court held that a plaintiff may "plead and prove actual reliance" without pointing to "specific misrepresentations" where the alleged misrepresentations "were part of an extensive and long-term advertising campaign." *Id.* at 328.

When *In re Tobacco II* applies, Rule 9(b) may not be read to require a plaintiff to plead reliance on specific advertisements. *Haskins v. Symantec Corp.*, 2013 WL 6234610, at *5 (N.D. Cal. Dec. 2, 2013). However, the scope of *In re Tobacco II* is narrow. As explained by the California Court of Appeal in *Pfizer Inc. v. Superior Court*, *In re Tobacco II* "does not stand for the proposition that a consumer who was never exposed to an alleged false or misleading advertising or promotional campaign" may bring a claim for relief. 182 Cal. App. 4th 622, 632 (2010). "Rather, *In re Tobacco II* stands for the narrower, and more straightforward proposition that, where a plaintiff has been exposed to numerous advertisements over a period of decades, the plaintiff is not required to 'plead with an unrealistic degree of specificity [the] particular

Case No. 19-CV-01646-LHK
ORDER GRANTING MOTION TO DISMISS WITH LEAVE TO AMEND

advertisements and statements' that she relied upon." *Kane v. Chobani, Inc.*, 2013 WL 5289253, at *9 (N.D. Cal. Sept. 19, 2013) (quoting *In re Tobacco II*, 46 Cal. 4th at 328) (emphasis added); *see also In re Arris*, 2018 WL 288085, at *9 (noting that "the *Tobacco II* exception [is] narrow and applie[s] [to] long-term advertising campaigns").

As a threshold matter, the *In re Tobacco II* exception applies to fraudulent advertising campaigns. 46 Cal. 4th at 327. As stated above, the FAC does not distinguish between the two sets of advertisements. As a result, the Court cannot conduct a full *In re Tobacco II* exception analysis.

For example, Plaintiff alleges that Defendant's advertising campaign began on January 13, 2017, and that Plaintiff made purchases "[d]uring the class period," which began in 2015. FAC ¶¶ 14, 66–67. However, Plaintiff does not specify which set of advertisements began on January 13, 2017. Moreover, even if the advertisements upon which Plaintiff relied began on January 13, 2017, the *In re Tobacco II* exception cannot apply to Plaintiff's 2015 or 2016 purchases that predate the advertising campaign. At most, the duration of the advertising campaign was approximately two years—from January 13, 2017 to March 29, 2019, when Plaintiff filed the instant suit. Advertising campaigns of this duration are typically, though not always, insufficient to invoke the *In re Tobacco II* exception. *See, e.g.*, *Azimpour v. Sears, Roebuck & Co.*, 2017 WL 1496255, at *4 (S.D. Cal. Apr. 26, 2017) (holding *In re Tobacco II* exception did not apply to a two-year advertising campaign); *Bronson v. Johnson & Johnson, Inc.*, 2013 WL 1629191, at *3 (N.D. Cal. Apr. 16, 2013) ("At best, Defendants' marketing campaign began in 2012, which is substantially less than the 'long-term' campaign at issue in *Tobacco II* that lasted at least seven years."); *PETA v. Whole Foods Mkt. Cal.*, 2016 WL 362229 (N.D. Cal. Jan. 29, 2016) (concluding that an advertising campaign with "signs, placards, and napkins over a four year period" did not satisfy *In re Tobacco II*).

Equally important is the pervasiveness and extent of any advertising campaign. Again, because Plaintiff does not identify upon which advertisements Plaintiff relied, the Court cannot assess the pervasiveness or extent of such advertising and thus cannot find that the *In re Tobacco*

16

*II* exception applies. As with the original complaint, the FAC merely alleges that Defendant's "representations are ubiquitous at the point of sale of the Products—on bags, signs, and labels throughout [Defendant's] physical locations." FAC ¶¶ 15, 16; Opp. at 9. This is generally insufficient. *See, e.g.*, *Delacruz v. Cytosport, Inc.*, 2012 WL 1215243, at *8 (N.D. Cal. Apr. 11, 2012) (dismissing complaint for failure to sufficiently plead reliance when plaintiff failed to allege the existence of "advertising campaign [that] approached the longevity and pervasiveness of the marketing at issue in *Tobacco II*").

Plaintiff's only response to this conclusion is to ask the Court to adopt United States District Judge Jon S. Tigar's *In re Tobacco II* standard in *Opperman v. Path, Inc.*, 84 F. Supp. 3d 962 (N.D. Cal. 2015), which Plaintiff argues is a more permissive standard. Opp. at 8–9. In *Opperman*, Judge Tigar identified six factors relevant to the *In re Tobacco II* inquiry:

> First, a plaintiff must allege that she actually saw or heard the defendant's advertising campaign. Second, the advertising campaign must be sufficiently lengthy in duration, and widespread in dissemination, that it would be unrealistic to require the plaintiff to plead each misrepresentation she saw and relied upon. Third, the plaintiff must describe in the complaint, and preferably attach to it, a representative sample of the advertisements at issue so as to adequately notify the defendant of the precise nature of the misrepresentation claim—what, in particular, defendant is alleged to have said, and how it was misleading. Fourth, the plaintiff must allege, and the court must evaluate, the degree to which the alleged misrepresentations contained within the advertising campaign are similar to each other. Fifth, each plaintiff must plead with particularity, and separately, when and how they were exposed to the advertising campaign, so as to ensure the advertisements were representations consumers were likely to have viewed, rather than representations that were isolated or more narrowly disseminated. And finally, sixth, the court must be able to determine when a plaintiff made his or her purchase or otherwise relied on defendant's advertising campaign, so as to determine which portion of that campaign is relevant.

*Id.* at 976–77.

However, even under this six-factor standard, Plaintiffs cannot invoke the *In re Tobacco II* exception. First, *Opperman* is distinguishable from the instant case. In *Opperman*, Judge Tigar found that Plaintiffs had adequately pleaded that *In re Tobacco II*'s exception applied because almost all of the six factors weighed in the plaintiff's favor. 84 F. Supp. 3d at 983. Notably, the court concluded that the second factor—the advertising campaign's duration and pervasiveness— weighed in favor of invoking the *In re Tobacco II* exception because it was five-years long and

17

Case No. 19-CV-01646-LHK
ORDER GRANTING MOTION TO DISMISS WITH LEAVE TO AMEND

very extensive.  Specifically, "Plaintiffs identif[ed] dozens of specific examples of what they believe[d] represent[ed] the advertising campaign, and those examples span[ned] eighteen pages of the [complaint] (not including the numerous examples attached to the complaint . . . .)."  *Id.* at 979.

As explained above, Plaintiff's failure to identify the specific advertisements upon which she relied renders impossible an assessment of whether the advertising campaign was extensive or pervasive.  Thus, Plaintiff has failed to allege an advertising campaign as extensive or pervasive as the advertising campaign in *Opperman*.  Moreover, the length of Defendant's alleged advertising campaign was, at best, less than half of the five-year campaign in *Opperman*.  Furthermore, unlike in *Opperman*, the balancing of the six factors does not weigh in favor of Plaintiff.  For example, in the instant case, the fifth factor (when plaintiff was exposed to the advertising campaign) also weighs against invoking the *In re Tobacco II* exception.  As explained above, the FAC only alleges that Plaintiff was exposed to the advertising campaign at some point "[d]uring the class period," which began in 2015—two years before the advertising campaign.  FAC ¶¶ 66–67.  As a result, this case is clearly distinguishable from *Opperman*.

Indeed, this case is more analogous to *Haskins v. Symantec Corporation*, 2014 WL 2450996 (N.D. Cal. June 2, 2014), another case where Judge Tigar applied the same six-factor standard as in *Opperman*.  Specifically, in *Haskins*, the court concluded that even though "some of the most basic factors, such as the first and the third, weigh in Plaintiff's favor[,] . . . . the other factors weigh strongly against applying the [*In re*] *Tobacco II* exception."  *Id.*  Specifically, the *Haskins* court emphasized the importance of the second factor—the duration and pervasiveness of the advertising campaign—and concluded that plaintiff's two-year advertising campaign "[fell] well short of the 'decades-long' campaign in [*In re*] *Tobacco II*, which made it 'unreasonable' to demand that the plaintiff identify a specific representation she actually viewed."  *Id.*  As a result, the *Haskins* court found that "the scope of the advertising campaign at issue in this case. . . . does not fall within the ambit of the [*In re*] *Tobacco II* exception."  *Id.*

The same is true in the instant case.  Like in *Haskins*, Plaintiff alleges she saw some

18

United States District Court
Northern District of California

unspecified advertisement and described a representative sample of possible advertisements. However, also as in *Haskins*, Plaintiff's two-year advertising campaign "falls well short of the 'decades-long' campaign in [*In re*] *Tobacco II*, which made it 'unreasonable' to demand that the plaintiff identify a specific representation she actually viewed." *Id*.  Additionally, and just as importantly, Plaintiff failed to allege facts that would permit the Court to accurately assess the extent and pervasiveness of any alleged advertising campaign.

Accordingly, the instant case is more analogous to *Haskins* than to *Opperman* such that even under Plaintiff's preferred standard, the *In re Tobacco II* exception does not apply. Therefore, because the Court concludes that Plaintiff has failed to satisfy the heightened pleading standard of Rule 9(b) and does not qualify for the exception contemplated by *In re Tobacco II*, the Court GRANTS Defendant's motion to dismiss the FAC in its entirety.

In its prior order, the Court explained that "failure to cure deficiencies identified herein or in Defendant's motion to dismiss will result in dismissal of the deficient claims with prejudice." ECF No. 35 at 25.  Typically, when a plaintiff already had an opportunity to amend the complaint but failed to address the issues that the Court previously identified in granting a motion to dismiss, dismissal with prejudice is warranted and appropriate.

However, the instant case is a unique one.  The Court grants Plaintiff leave to amend one final time because, as explained previously, Plaintiff's claims may be able to proceed depending on which specific advertisements she allegedly saw, believed, and relied upon.[2]  As a result, amendment would not necessarily be futile.  Therefore, the Court GRANTS Plaintiff leave to amend one final time.

## IV.   CONCLUSION

For the foregoing reasons, the Court GRANTS Defendant's motion to dismiss with leave

---

[2] Additionally, Plaintiff claims that she purchased products throughout the class period beginning in 2015.  FAC ¶¶ 66–67.  However, Plaintiff also alleges that Defendants' "100% clean" advertising campaign only began on January 13, 2017.  *Id.* ¶¶ 14, 17.  As such, Plaintiff must amend the complaint to harmonize these allegations, as Plaintiff could not have relied on the advertisements before the start of the advertising campaign.

Case No. 19-CV-01646-LHK
ORDER GRANTING MOTION TO DISMISS WITH LEAVE TO AMEND

United States District Court
Northern District of California

1    to amend.  Plaintiff shall file any amended complaint within 30 days of this Order.  In the amended

2    complaint, to the extent that Plaintiff does not plead the existence of an advertising campaign of the

3    necessary "extent and pervasiveness" to satisfy the *In re Tobacco II* exception, Plaintiff shall set forth

4    in chart form the misstatements that Plaintiff challenges on a numbered, statement-by-statement basis:

5    (1) the challenged statement; (2) the location and timing of the statement; (3) the Product(s) covered

6    by the statement; (4) the date on which Plaintiff witnessed the statement; and (5) the Product(s)

7    Plaintiff purchased on the basis of the statement.

8         Failure to file an amended complaint within 30 days of this Order or failure to cure

9    deficiencies identified herein or in Defendant's motion to dismiss will result in dismissal of the

10   deficient claims with prejudice.  As before, Plaintiff may not add new causes of action or new parties

11   without a stipulation or leave of the Court.

12   **IT IS SO ORDERED.**

13   Dated: June 30, 2020

14                                                    *Lucy H. Koh*

15                                                    LUCY H. KOH
                                                     United States District Judge
16

17

18

19

20

21

22

23

24

25

26

27

28

Case No. 19-CV-01646-LHK
ORDER GRANTING MOTION TO DISMISS WITH LEAVE TO AMEND